STATE OF CONNECTICUT *v.* RAYNOR HUNTER
(10001)

O'CONNELL, LAVERY and NOVACK, Js.

Argued September 25, 1991—decision released March 17, 1992

*Christopher G. James,* assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Bernadette Conway,* assistant state's attorney, for the appellee (state).

E. Y. O'CONNELL, J. The defendant appeals from the judgment of conviction of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a).[1] Following the denial of his motion to suppress evidence, the defendant entered a conditional plea of nolo contendere[2] pursuant to General Statutes § 54-94a.[3]

---

[1] General Statutes § 21a-277 (a) provides in pertinent part: "Any person who . . . possesses with the intent to sell or dispense . . . to another person any controlled substance which is a hallucinogenic substance other then marihuana . . . for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] The transcript indicates a plea of guilty and not a plea of nolo contendere. It is clear from the context that a nolo contendere plea was intended. It was treated as such by the trial court and the parties and we will do likewise.

[3] General Statutes § 54-94a provides in pertinent part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the

The defendant claims[4] that (1) the trial court improperly denied his motion to suppress because the police informant lacked a sufficient basis of knowledge to establish probable cause to arrest him, (2) the facts fail to provide sufficient indicia of the informant's veracity to support the trial court's finding of probable cause, and (3) the trial court's findings improperly included certain factual and material conclusions that were inconsistent with the evidence. We affirm the judgment of the trial court.

The trial court relied on the following facts. On January 24, 1990, Officer James Klick of the Middletown police department was a member of the uniform patrol division. During his seventeen and one-half years as a police officer, Klick had been involved in dozens of narcotics investigations. On January 24, 1990, his assignment was a walking patrol in the north end of Middletown. While in uniform, patrolling this area, he was approached by an unnamed informant[5] who told him that the defendant was dealing drugs on the corner of Main and Ferry Streets. The informant also told Klick that (1) she had seen the defendant dealing drugs

---

defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

[4] Because the defendant's brief was filed before our Supreme Court decided *State* v. *Barton,* 219 Conn. 529, 594 A. 2d 917 (1991), he has framed his issues in accordance with the probable cause analysis adopted in *State* v. *Kimbro,* 197 Conn. 219, 496 A. 2d 498 (1985).

[5] Because the informant's gender was not revealed at trial, the pronoun she will be used throughout this opinion so as to avoid repeated use of the term he/she.

Klick's testimony revealed that he used the term "anonymous source" only to indicate that he would not provide the court with the informant's identity. Further, Klick's testimony revealed that he had never used this informant on any prior occasions, nor did he have knowledge of any other officer using the individual as an informant. Klick also did not know if this informant had a criminal record.

earlier that day, (2) she had seen two people supply the defendant with cocaine in the past, (3) the defendant could be seen that day at the corner of Main and Ferry Streets talking to various individuals after which he would move out of sight, (4) on that day, she had seen the two persons who had supplied the defendant with drugs at one of three apartments on the third level of the Green Court Apartments, and (5) she was relating this information to Klick because she was "sick and tired of what was going on in the North End."

Prior to the informant's approaching him, Klick was aware of the defendant's reputation as a street level drug dealer. In an effort to confirm the informant's information, Klick commenced surveillance of the defendant for one to one and one-half hours during each of his 4 p.m. to 12 midnight shifts on January 24 and 25. During the period of this surveillance, at least ten persons approached the defendant at the corner of Main and Ferry Streets. Those who approached the defendant conversed with him briefly and would then enter a building or an alleyway with him, or, in some instances, go with him as far as a block away and around the corner. This conduct corroborated the information furnished by the informant and, on the basis of Klick's training and experience, he recognized it as the way street drug transactions are made.

On January 26, 1990, Klick was again approached by the same informant who stated that the defendant was, at that moment, selling drugs on the corner of Main and Ferry Streets. The informant further stated that, when the defendant ran out of drugs, he would go to one of the three apartments on the third level of the Green Court Apartments to resupply. The informant told Klick that she knew the defendant would go to that apartment because she had been present there on an earlier occasion when two persons supplied the defendant with drugs to sell on the street. Klick knew that

these two individuals were currently under surveillance by police officers from the street crime unit because they were believed to be supplying drugs to the defendant and other dealers.

Klick, accompanied by a fellow officer, commenced surveillance of the Green Court Apartments. At 11 p.m., the officers observed the defendant walk to the third level of Green Court and enter through the third door. Approximately five minutes later, they saw the defendant leave the building and walk up Ferry Street toward Main Street. The officers intercepted the defendant and instructed him to remain where they could see him and to put his hands against a nearby van. The defendant complied and was searched. From the defendant's left front pocket, the officers seized six packets of a white substance, later determined by toxicological analysis to contain cocaine.

The defendant filed a motion to suppress, in which he claimed that the search and seizure of his person violated his rights under the fourth, fifth and fourteenth amendments to the United States constitution and article first, §§ 7, 8 and 9, of our state constitution. At the suppression hearing, the court ruled that Klick had probable cause to arrest the defendant and to conduct a search incident thereto. The defendant entered a plea of nolo contendere, conditioned on his right to take an appeal.[6]

We begin our analysis by noting that after the trial court's suppression hearing and before the argument on this appeal our Supreme Court decided *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991), which adopted the reasoning of the United States Supreme Court in *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *Barton* expressly overruled *State*

---

[6] See footnote 3, supra.

v. *Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985), effec-
tively easing the probable cause requirements. *Barton*
has been applied retroactively to cases pending at the
time it was decided. See *State* v. *Johnson,* 219 Conn.
557, 594 A.2d 933 (1991).

Prior to *Barton,* the Connecticut Supreme Court held
to the rigid *Aguilar-Spinelli*[7] test that the sufficiency
of an informant's information depended on the state's
establishing (1) the informant's "basis of knowledge"
about the information he furnished and (2) the under-
lying facts establishing his veracity. *State* v. *Kimbro,*
supra, 224–25. In adopting the *Gates* "totality of the
circumstances" analysis for determining the existence
of probable cause, our Supreme Court now allows the
court to look beyond the two prongs of the *Aguilar-
Spinelli* test and to examine the "totality of circum-
stances" involved. *State* v. *Barton,* supra, 544.

In addressing the defendant's claim that there was
insufficient evidence to support the trial court's find-
ing that Klick had probable cause to make a warrant-
less arrest and to conduct a search incident thereto,
we first note that "[i]t is an established rule that a prop-
erly conducted warrantless search incident to lawful
arrest is not illegal. . . . In order for the search to
be legal, however, the arrest itself must be valid." (Cita-
tions omitted.) *State* v. *Velez,* 215 Conn. 667, 672, 577
A.2d 1043 (1990). General Statutes § 54-1f (b) permits
a police officer to make a warrantless arrest of " ' "any
person who such officer has reasonable grounds to
believe has committed or is committing a felony." "Rea-
sonable grounds" is to be equated with probable
cause. . . . Probable cause means more than mere
suspicion. There must be facts and circumstances
within the officer's knowledge, and of which he has

---

[7] *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964);
*Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed.' . . ." (Citations omitted.) Id.

Whether the arrest or the search came first is not relevant because "[a] formal arrest need not always chronologically precede the search in order for the search to be valid. Where there is probable cause to arrest, a search before an arrest is reasonable under the fourth amendment as long as the arrest and search and seizure are substantially contemporaneous, and are integral parts of the same incident. *Rawlings* v. *Kentucky,* 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *State* v. *Federici,* 179 Conn. 46, 54–55, 425 A.2d 916 (1979)." *State* v. *Kaplan,* 20 Conn. App. 183, 188, 565 A.2d 11 (1989).

The informant was not previously known to Klick. If Klick, without more, had gone forth and arrested the defendant, he would have been acting without probable cause. The defendant relies on the following quotation from *State* v. *Kimbro,* supra, 233. "In this case, given the complete lack of any independent police investigation or information tending to corroborate the informant's information, we conclude that the trial court's finding that probable cause was not demonstrated is supported in this record." That quotation is wholly inapplicable to the present case. Here, there was substantial independent police investigation which corroborated a large portion of the informant's tip. Corroboration of an informant's tip by independent police information has long been considered critical in determining probable cause. *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967); *Draper* v. *United States,* 357 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959).

*Gates* and *Barton* do not abandon the "basis of knowledge" and "veracity" or "reliability" tests and still consider them highly relevant and " 'closely intertwined issues that may usefully illuminate the common sense, practical question' of the existence of probable cause to believe that contraband or evidence is located in a particular place." *State* v. *Barton,* supra, 537, quoting *Illinois* v. *Gates,* supra, 230.

The state argues that even under the stringent *Aguilar-Spinelli* test, Klick had probable cause to make a warrantless arrest of the defendant. We do not reach that argument, however, because, under the totality of the circumstances, including the substantial independent police corroboration, Klick had probable cause to believe that the defendant had committed or was at that moment committing a felony. See General Statutes § 54-1f (b). The defendant's arrest was valid and, thus, he was lawfully searched incident to that arrest.

The judgment is affirmed.

In this opinion the other judges concurred.