STATE OF CONNECTICUT *v.* DARIN SCOTT
(9977)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued February 19—decision released April 21, 1992

*Susan A. Brown,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gerard P. Eisenman,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was convicted, after a trial to the court, of attempted murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b). He was arrested after the police entered his house with probable cause for an arrest, but without an arrest warrant and without his consent. Immediately thereafter, at the police station, the police performed an atomic absorption test on the defendant's hands to test for the presence of chemical elements consistent with the recent firing of a gun. The sole issue in this appeal is whether the trial court improperly denied the defendant's motion to suppress the results of that atomic absorption test as the fruit of an unconstitutional seizure of his person. The resolution of the issue depends on whether exigent circumstances existed at the time the defendant's house was entered. We affirm the judgment of the trial court.

At approximately 1:15 a.m. on May 23, 1990, Harold White was standing on Albion Street in Bridgeport when he was shot four or five times. White was immediately rushed to Park City Hospital. Detective Richard Herlihy arrived at the hospital immediately after the shooting at approximately 2 a.m., but was unable to speak to the victim because of his condition.

Herlihy then spoke to two witnesses at the crime scene. Both witnesses stated that they saw a man shoot the victim. One of the witnesses knew the perpetrator as Zuke and knew that he lived on Orland Street. She then directed Herlihy to a multi-family home at 231-233 Orland Street, which she stated was where Zuke lived. Soon thereafter, at the police station, the two witnesses each separately identified a picture of the defendant from a photograph array as being the person who had shot White earlier that morning.

Herlihy then returned to Park City Hospital at about 5 a.m. and was able to interview the victim just prior to surgery. The victim identified the defendant's picture, from the same photograph array that was shown to the two witnesses, as the person who had shot him. The victim also gave Herlihy some details about the shooting, including the fact that after the first gun shot felled him, the defendant shot him several additional times while he was on the ground.

At that point in the investigation, Herlihy believed he had probable cause to arrest the defendant. Herlihy and other police officers then went to 231-233 Orland Street to arrest the defendant and arrived there at approximately 5:30 a.m.

The police officers knocked on the door to the first floor apartment of the two-family house. A woman came to the door. The police officers informed her that they were looking for the defendant in connection with a shooting earlier that morning. The woman told the police officers that the defendant lived upstairs and led the officers through the adjacent door and up the stairs to the kitchen of the second floor apartment. There were two women in the kitchen. Herlihy again identified himself as a police officer and explained that he was looking for the defendant in connection with the shooting. Herlihy then walked into the bedroom adja-

cent to the kitchen and found the defendant facedown on the floor between a bed and a bureau.

The defendant was arrested and taken to the police station. At the police station, an atomic absorption test was performed on the defendant's hands.

Prior to the trial, the defendant moved to suppress evidence obtained as a result of his arrest, namely, the results of the atomic absorption test, claiming that his arrest was an unconstitutional seizure. The court found that the police had reasonably concluded that there was probable cause for the defendant's arrest and had assumed that the defendant lived in the apartment in which he was arrested. On the basis of the evidence introduced, we conclude that there was probable cause for the arrest and that the defendant had standing to object to the entry because he was arrested in his house. The trial court further found that the warrantless arrest in the defendant's house was justified by exigent circumstances and denied the motion to suppress.

The fourth amendment to the constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A similar provision is found in article first, § 7, of the Connecticut constitution. It is a fundamental principle of constitutional law that searches and seizures inside a house made without a warrant are presumptively unreasonable. *Payton* v. *New York,* 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State* v. *Guertin,* 190 Conn. 440, 446, 461 A.2d 963 (1983). Absent exigent circumstances and probable cause for arrest, a person's house may not be entered without a warrant. *Payton* v. *New*

*York,* supra, 590; *State* v. *Guertin,* supra. We have recently determined that our state exclusionary rule, as derived from article first, § 7, of the Connecticut constitution, bars the state from using evidence acquired outside a defendant's house following an illegal arrest in the house, unless the taint resulting from the arrest is sufficiently attenuated from the initial entry into the house. *State* v. *Geisler,* 25 Conn. App. 282, 292, 594 A.2d 985, cert. granted, 220 Conn. 918, 597 A.2d 342 (1991).

"The question of what constitutes exigent circumstances justifying a warrantless entry of a private dwelling has been a difficult one for both the police and the courts." *State* v. *Enright,* 17 Conn. App. 142, 148, 550 A.2d 1095 (1988). "The phrase 'exigent circumstances' refers generally to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." *United States* v. *Campbell,* 581 F.2d 22, 25 (2d Cir. 1978); *State* v. *Guertin,* supra, 447.

The trial court relied on the exigent circumstances test set forth in *Dorman* v. *United States,* 435 F.2d 385 (D.C. Cir. 1970). The *Dorman* test establishes a number of factors to be considered in analyzing a claim of exigent circumstances. "These are (1) that a grave offense is involved, particularly one that is a crime of violence; (2) that the suspect is reasonably believed to be armed; (3) that there is a clear showing of probable cause; (4) that there is a strong reason to believe the suspect is in the premises being entered; (5) that there is a likelihood that the suspect will escape if not swiftly apprehended; (6) that the entry, though not consented to, is made peaceably, although forcible entry may be justified in some instances. Another factor to be considered is (7) the time of entry. [*Dorman* v. *United*

*States,* supra,] 392–93. The latter factor may cut both ways. A night entry may, on the one hand, underscore the impracticability of securing a warrant and, at the same time, raise particular concern about its reasonableness." *State* v. *Guertin,* supra, 449–50.

Here, the trial court, applying *Dorman,* found all seven factors to justify a warrantless arrest based on exigent circumstances. A grave, violent offense had been committed; the police had not found the weapon at the scene and therefore could reasonably believe the suspect was still armed; three eyewitness identifications clearly demonstrated probable cause; the defendant would likely have returned to his house and would still be there at that early hour; it was likely that the suspect would escape if not apprehended; and the entry was made peacefully. The court also took judicial notice that the courts were not open at 5:30 a.m. and that there would have been a significant delay if a warrant had been sought.

In *State* v. *Guertin,* supra, our Supreme Court concluded that exigent circumstances were present under the facts of that case and that the *Dorman* test had been satisfied. The court, however, recognized a number of practical problems with *Dorman* where less than all of the factors are present. Id., 451. It noted commentary suggesting that "the *Dorman* approach is too sophisticated to be applied with a fair degree of consistency by well-intentioned police officers, in that it requires them to make on-the-spot decisions by a complicated weighing and balancing of a multitude of imprecise factors." Id., citing 2 W. LaFave, Search and Seizure (1978) § 6.1, p. 390. The *Guertin* court noted LaFave's solution to the perceived *Dorman* deficiencies, namely, a test based on a "distinction between the 'planned' arrest and the arrest which is made in the course of an ongoing investigation in the field." *State* v. *Guertin,* supra, 451–52, citing 2 W. LaFave, supra,

p. 391. *Guertin,* however, rejected the LaFave suggestion and adopted the exigent circumstances test formulated in a case of the West Virginia Supreme Court of Appeals. " 'The test of exigent circumstances for the making of an arrest for a felony without a warrant . . . is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test; its preeminent criterion is what a *reasonable,* well-trained police officer would believe, not what the arresting officer actually did believe.' (Footnote omitted, emphasis in original.)" *State* v. *Canby,* 252 S.E.2d 164, 167 (W. Va. 1979), quoted in *State* v. *Guertin,* supra, 453. Applying the *Canby* test, the *Guertin* court concluded that exigent circumstances existed to justify the warrantless arrest there.

Although *Guertin* adopts the *Canby* test; see *State* v. *Klauss,* 19 Conn. App. 296, 301, 562 A.2d 558 (1989); *State* v. *Reagan,* 18 Conn. App. 32, 37, 556 A.2d 183, cert. denied, 211 Conn. 805, 559 A.2d 1139 (1989); *State* v. *Enright,* supra; we further conclude that *Guertin* also supports the view that the *Canby* test is met where all of the *Dorman* factors are present. The presence of the first, second, fifth and seventh *Dorman* factors,[1] taken together, necessarily support the *Canby* requirement that "the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to . . . flee or otherwise avoid capture, or might, during the time necessary to

[1] The first, second, fifth and seventh *Dorman* factors are present where a grave crime of violence is involved, the suspect is believed to be armed, the suspect is likely to escape if not quickly apprehended, and entry is made when the practicability of securing a warrant is especially lessened.

procure a warrant, endanger the safety . . . of others." *State* v. *Canby,* supra, 167. The additional presence of the third, fourth and sixth *Dorman*[2] factors assures the reasonableness of the police conduct because these factors embody the recognition that "[p]hysical entry of the home is the chief evil against which the wording of the fourth amendment is directed." *State* v. *Guertin,* supra, 447. Thus, *Guertin* does not disapprove of consideration of the *Dorman* factors but, rather, recognizes the limitations attendant upon any mechanical application of those factors.

In those cases where less than all of the *Dorman* factors are present, *Guertin's* approval of *Canby* allows a focus on the totality of the circumstances. A trial court is, therefore, left free to examine the particular mix of factors present in assessing the necessity for immediate arrest by the police. We read *Guertin's* failure to disavow *Dorman* as continuing the vitality of an analysis of the *Dorman* factors in assessing exigent circumstances to justify a warrantless arrest in the house in Connecticut. Although the third, fourth and sixth *Dorman* factors[3] have little to do with any necessity for immediate arrest, they do assure the reasonableness of police conduct in making warrantless searches and seizures, thus meeting the core requirements of the fourth amendment to the constitution of the United States and of article first, § 7, of the Connecticut constitution.

We conclude that the *Guertin* test requires a trial court to examine whether, on the basis of the totality of the circumstances and giving particular consideration to the relevant factors identified in *Dorman,* a rea-

[2] The third, fourth and sixth *Dorman* factors are present when there is a clear showing of probable cause, a strong reason to believe the suspect is in the premises to be entered, and the entry, though nonconsensual, is made peaceably.

[3] See footnote 2, supra.

sonable, well trained police officer would have had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others.

Because each of the *Dorman* factors is present here and because the *Guertin* test is therefore met, we conclude that the warrantless arrest of the defendant was justified by exigent circumstances. The offense of attempted murder involved was both grave and violent. The victim was not only shot but was shot while he lay injured on the ground. The gun used was not found at the scene of the crime, leading reasonably to the conclusion that the defendant continued to be armed with the weapon. See *State* v. *Hopes,* 26 Conn. 367, 375–77, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We believe that these factors, recognized by the trial court as significant under *Dorman,* were also sufficient to give the police reasonable grounds to believe that if an immediate arrest were not made, the accused would likely flee and be able to avoid capture and very well might, during the time necessary to procure a warrant, endanger the safety of others, as outlined in *Guertin.* The additional *Dorman* factors present here, namely, that there was a clear showing of probable cause, that both the time of day and the information given to the police gave them strong reason to believe that the defendant was in the premises being entered, and the peaceable nature of the entry, further convince us that this "invasion of the sanctity of the home" was carried out in a reasonable manner under the circumstances. *State* v. *Guertin,* supra, 447–48. Finally, since the entry was otherwise reasonable, the predawn entry here "underscore[d] the impracticability of securing a warrant . . . ." Id., 450. The trial court, therefore, correctly denied the motion

to suppress because the warrantless arrest of the defendant in his house was justified by the presence of exigent circumstances.

The judgment is affirmed.

In this opinion the other judges concurred.