STATE OF CONNECTICUT *v.* JOHN CONLEY
(11259)

FOTI, HEIMAN and SCHALLER, Js.

Argued March 30—decision released June 8, 1993

*Stephen F. Cashman,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Carl E. Taylor,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a). On appeal, the defendant claims that the trial court improperly (1) denied his motion to suppress evidence seized in violation of his state and federal constitutional rights, (2) denied his motion to dismiss the information, and

(3) denied his motion for acquittal and his posttrial motion to set aside the verdict. We affirm the judgment of the trial court.

The defendant was charged with one count of possession of a narcotic substance with intent to sell by a person who is not drug-dependent. The defendant filed a motion to suppress pursuant to General Statutes § 54-33f. After a hearing, the trial court denied the motion. The defendant also filed a motion to dismiss the information, which the trial court denied. The case thereafter proceeded to trial.

The jury reasonably could have found the following facts. On September 5, 1991, Officer Jack Wenz, a member of the special service division of the New Britain police department, conducted a surveillance of the area surrounding the Mount Pleasant housing project. In the course of the surveillance, Wenz observed four men gathered around a parked car. The group consisted of three Hispanic men and one African-American man, later identified as the defendant. As Wenz moved closer to the group, he recognized one of the Hispanic men, who ran when he saw Wenz.

Wenz continued walking toward the parked car and noticed that the defendant held a cellophane packet in his left hand. Wenz grabbed the defendant's shoulder and told him to put his hands on the car. The defendant complied and in doing so dropped the packet. Wenz thought that the contents of the cellophane packet looked like heroin. When he patted down the defendant in a search for weapons, a brief struggle ensued. Wenz regained control of the defendant and handcuffed him.

Wenz retrieved the cellophane packet, which contained six glassine packets, each containing white powder and stamped with the word "happy." Wenz knew that the word "happy" commonly appeared on pack-

ages containing heroin. He field-tested one of the packets, which tested positive for the presence of heroin. Wenz then arrested the defendant and searched him. The search revealed that the defendant did not possess any drug paraphernalia.

A toxicologist subsequently tested the six confiscated glassine packets and determined that each contained heroin. Each packet had a street value of $20 and would yield a profit of $8. The amount of heroin found in the defendant's possession was three times that usually carried by those in New Britain who possess the drug solely for personal use.

At the conclusion of the state's case, the defendant filed a motion for acquittal. The court denied the defendant's motion and submitted the case to the jury. The jury returned a verdict of guilty as charged. The defendant filed a motion to set aside the verdict. After a hearing on the matter, the court ruled that the defendant was drug-dependent. The court accordingly rendered judgment against the defendant on the lesser included offense of possession with intent to sell in violation of General Statutes § 21a-277 (a). This appeal followed.[1]

I

The defendant first claims that the trial court improperly denied his motion to suppress. This argument is predicated on the assertion that the seizure of heroin was the result of an illegal seizure of the defendant's person in violation of article first, §§ 7 and 9, of the Connecticut constitution and the fourth amendment to the United States constitution. We disagree.

The following facts were adduced during the hearing on the defendant's motion to suppress. On Septem-

---

[1] Additional facts will be provided where necessary.

ber 5, 1991, Detective Michael Sullivan of the special service division of the New Britain police department received information from a confidential informant regarding illegal narcotics activity on Armistice Street in New Britain, in the vicinity of the Mount Pleasant housing project. In the past, Sullivan had received reliable information from the same informant that resulted in at least four arrests and four convictions.

The informant told Sullivan that he had observed an African-American male selling heroin in a parking lot behind Armistice Street. According to the informant, the male was wearing "green-yellow" clothes and appeared to be working on a car. Sullivan immediately orchestrated an investigation of the complaint that involved several police officers including Wenz. Sullivan explained to Wenz that he had received information from an informant, but did not tell Wenz that the informant had previously provided reliable information.[2]

The unit proceeded to Armistice Street where Wenz alone approached the area in question. The remaining officers were positioned in nearby areas to assist Wenz if necessary. Wenz observed a group assembled around a brown car that was missing one wheel. One member of the group was an African-American male wearing green-yellow clothes and holding a cellophane packet in his hand. Wenz also observed a known drug user walking away from the group. According to Wenz, this person dropped what appeared to be a packet of narcotics.

---

[2] We note that the defendant asserts that Wenz' lack of firsthand knowledge regarding the reliability of the informant undercuts the validity of the seizure. This claim is without merit. *State* v. *Dennis*, 189 Conn. 429, 432, 456 A.2d 333 (1983). "[W]hen we test the quantum of evidence supporting probable cause, it is not the personal knowledge of the arresting officer but the collective knowledge of the law enforcement organization at the time of the arrest which must be considered." Id.

Wenz continued in the direction of the car when another person, aware of Wenz' presence, abruptly broke away from the group. At this point, Wenz perceived that the defendant realized police were in the area. Wenz grabbed the defendant's shoulder and told him to put his hands on the car. As the defendant reached for the car, he dropped a cellophane packet that Wenz believed contained heroin. Wenz handcuffed the defendant, retrieved the packet and confirmed his suspicion regarding its contents.

The defendant filed a motion to suppress the evidence obtained in the course of the investigation. He claimed, as he claims now, that the heroin seized by the police was the fruit of an illegal arrest. After a hearing, the trial court denied the defendant's motion and issued a memorandum of decision. In its memorandum, the court stated: "Officer Wenz had probable cause, based upon his knowledge and that of his fellow officer, to effect the seizure of the defendant. The articulable suspicion required for a stop to search for a weapon was also present to justify the pat down for a weapon." The defendant now challenges the court's decision to deny his motion to suppress.

We review a trial court's denial of a motion to suppress in accordance with well settled standards. We will not disturb a trial court's conclusions unless they are legally and logically inconsistent with the facts. *State* v. *Cofield,* 220 Conn. 38, 44, 595 A.2d 1349 (1991); *State* v. *MacNeil,* 28 Conn. App. 508, 512–13, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). Our analysis involves a two-pronged inquiry. "First, where the court's legal conclusions are challenged, we must decide if they are legally and logically correct, and if they are supported by the facts set forth in the memorandum of decision. *State* v. *Zindros,* [189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984)]. Sec-

ond, if the factual basis of the court's decision is challenged, we must determine whether the facts in the memorandum are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. Id." *State* v. *MacNeil,* supra, 513.

As a threshold matter, we assume that when Wenz initially grabbed the defendant he effected an arrest for purposes of article first, §§ 7 and 9, of the Connecticut constitution and the fourth amendment to the United States constitution. See *State* v. *Cofield,* supra, 46. The issue, therefore, is whether the arrest of the defendant was constitutionally permissible. In analyzing this question, we consider whether the trial court properly determined that probable cause existed to justify the warrantless arrest of the defendant.

The fourth amendment to the constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause . . . ." A similar provision is found in article first, § 7, of the Connecticut constitution.[3] *State* v. *Scott,* 27 Conn. App. 403, 406–407, 606 A.2d 720, cert. denied, 222 Conn. 911, 608 A.2d 1184 (1992).

General Statutes § 54-1f (b) permits a police officer to make a warrantless arrest of "any person who such officer has reasonable grounds to believe has committed or is committing a felony." Our Supreme Court has made clear that " ' "[r]easonable grounds" is to be equated with probable cause. *State* v. *Cobuzzi,* [161

---

[3] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972)]; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75 (1965). Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed.' " *State* v. *Velez,* 215 Conn. 667, 672, 577 A.2d 1043 (1990); *State* v. *Hunter,* 27 Conn. App. 128, 133–34, 604 A.2d 832 (1992).

When an informant's tip underlies an arrest, the trial court's task is to review the "totality of the circumstances" to determine the existence of probable cause. *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991). This inquiry involves an assessment of "the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . ." *Illinois* v. *Gates,* supra, 284; *State* v. *Barton,* supra. The informant's "veracity," "reliability," and "basis of knowledge" are highly relevant. *State* v. *Barton,* supra, 537; *State* v. *Hunter,* supra, 135. Moreover, "[c]orroboration of an informant's tip by independent police information has long been considered critical in determining probable cause. *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967); *Draper* v. *United States,* 357 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959)." *State* v. *Hunter,* supra, 134.

Here, in view of the totality of the circumstances, the trial court properly concluded that Wenz had probable cause to believe that the defendant was engaged in the sale of illegal narcotics. A time-tested and reliable confidential informant alleged in detail an incident of drug trafficking that he had observed in a known drug trafficking area. He described the defendant's appearance and the area of the alleged crime scene.

Moments after receiving this information, Sullivan initiated an investigation of the matter. In the course of the investigation, the police witnessed a scenario nearly identical to the allegations of the informant. It follows, therefore, that upon the corroboration of the informant's tip, Wenz had probable cause to arrest the defendant. We hold that, from the totality of the circumstances, the trial court's finding of probable cause was legally and logically consistent with the facts.

Our holding necessarily forecloses the second prong of the defendant's claim, namely, that the evidence of heroin was the fruit of an illegal seizure. Because the arrest was lawful, Wenz was constitutionally entitled to search the defendant's person as an incident to the lawful arrest. *State* v. *Copeland,* 205 Conn. 201, 209, 530 A.2d 603 (1987). It follows, therefore, that evidence obtained in the course of the proper warrantless search is not subject to suppression.

## II

The defendant next claims that the trial court improperly denied his motion to dismiss the substitute information. Specifically, he asserts that the substitute information failed to apprise him properly of the charges pending against him.

On January 17, 1992, the state, by substitute information, charged the defendant with one count of possession of a narcotic substance with intent to sell by a person who is not drug-dependent. The information specifically alleged that the defendant violated § 21a-278 (b)[4] "when with intent to sell, distribute

---

[4] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense . . . any . . . hallucinogenic substance other than marijuana . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

and/or dispense a narcotic substance, specifically heroin, he possessed said narcotic . . . ." The defendant moved to dismiss the substitute information. After oral argument on the matter, the trial court denied the motion, but, in doing so, suggested that the state remove the term "distribute" from the information.

Immediately after oral argument, the state filed an amended substitute information deleting the word "distribute," which appeared in the earlier information. The state therefore charged the defendant with possession of heroin with intent to sell or dispense. The defendant now appeals the trial court's denial of his motion to dismiss. He argues that, phrased in the disjunctive, the *substitute information* charged two separate offenses in a single count, namely (1) possession with intent to sell or dispense and (2) distribution.[5] Emphatically, the defendant does *not* challenge or even mention the *amended substitute information.*

It is axiomatic that alternative allegations phrased in the disjunctive and embodied in a single count do not sufficiently apprise a defendant of the nature of the crime charged. *State* v. *Eason,* 192 Conn. 37, 40, 470 A.2d 688 (1984); *State* v. *Cofone,* 164 Conn. 162, 167, 319 A.2d 381 (1972). An information that is defective in this regard deprives the defendant of his constitutional right to fair notice of the specific offense for which he has been charged. *State* v. *Eason,* supra. When charges are duplicitous, however, the trial court is not required to dismiss them. Practice Book § 817; *State* v. *Markham,* 12 Conn. App. 306, 311, 530 A.2d 660 (1987).

---

[5] The substitute information actually charges the defendant with possession with intent to "distribute." The statute, by contrast, does not proscribe the intent to "distribute" when a defendant is in possession of narcotics. For purposes of this appeal, therefore, we refer to the substitute information as charging the defendant with "distribution" and not possession with intent to distribute.

Duplicity is a term of art used to describe a situation in which the state charges separate offenses in a single count. *State* v. *Markham,* supra, citing 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 19.2 (e). Practice Book § 817 provides that a trial court shall not dismiss an information for duplicity. Rather, the defendant's recourse is to file a motion for a bill of particulars. *State* v. *Markham,* supra. In addition, Practice Book § 818 empowers the trial court to order such relief as is required to remedy a duplicitous information.

In the present case, the substitute information is duplicitous because in a single count it charges the defendant with (1) possession with intent to sell or dispense and (2) distribution. The defendant did not, however, request the state to clarify the nature of the charges as set forth in the substitute information. Instead, he sought to dismiss the charges altogether. As reflected in the trial court's denial of the defendant's motion, dismissal on the basis of duplicity is not sanctioned by our rules of practice. Further, the court encouraged the state to rectify any defects in the substitute information, and the state heeded the court's suggestion.[6] We conclude that in denying the defendant's motion to dismiss and encouraging the state to redraft the substitute information, the trial court properly responded to the defendant's claim that the substitute information was defective.

---

[6] We note that, because the state filed the amended substitute information in the course of jury selection, Practice Book § 624, as opposed to § 623, governs. In *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 752 (1986), this court held that "for purposes of Practice Book §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors." Pursuant to § 624, after the commencement of trial, the state may amend the information for good cause shown "if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced." As previously stated, the defendant has not challenged, in any way, the validity of the *amended* substitute information. Accordingly, we have no basis on which to conclude that the state improperly filed the amended substitute information.

The only remaining question, therefore, is whether the duplicitous substitute information prejudiced the defendant. Practice Book § 818 provides that "[n]o appeal . . . based on [duplicity] shall be sustained unless it is affirmatively shown that the defendant was, in fact, prejudiced in his defense on the merits and that substantial injustice was done to him because of such defect." In the present case, the defendant's claim that he was prejudiced by the *substitute* information is moot because the *amended* substitute information superseded any earlier version of the charges. On appeal, moreover, the defendant has not challenged or even mentioned the propriety of the amended substitute information—the document that ultimately set forth the charge on which the defendant was tried. In the absence of a showing of prejudice, we cannot sustain the defendant's appeal as it pertains to the duplicitous substitute information.

## III

The defendant's final claim is that the state failed to introduce evidence sufficient to prove possession of narcotics with intent to sell. The defendant primarily asserts that, aside from his possession of six packets of heroin, there was no additional evidence establishing that he intended to sell narcotics. We disagree.

Our standard of review for challenges to the sufficiency of evidence is well settled. "We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found upon the facts established and the inferences reasonably drawn therefrom, that a cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Hamilton,* 30 Conn. App. 68, 71–72,

618 A.2d 1372 (1993). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985). "The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available." (Internal quotation marks omitted.) *State* v. *Baldwin,* supra.

Possession of narcotics in quantities ordinarily not associated with personal use is a factor on which a jury reasonably may rely to infer intent to sell. *State* v. *DeWitt,* 28 Conn. App. 638, 640–42, 611 A.2d 926, cert. denied, 224 Conn. 903, 615 A.2d 1045 (1992); *State* v. *Napoleon,* 12 Conn. App. 274, 283–85, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987). Our courts, however, have stopped short of declaring that this factor alone warrants an inference of intent. In this case, expert testimony established that the defendant possessed an amount of heroin that was unusually large for personal use only. According to this testimony, the typical user of heroin in New Britain tends to possess one or two packets, and a street dealer ordinarily carries up to ten packets. The jury was entitled to credit this testimony as a factor in the analysis of whether the state had inferentially established intent to sell beyond a reasonable doubt.

Evidence further established that the defendant, while possessing large amounts of heroin, did not carry any drug paraphernalia. It would be reasonable to infer that had the defendant intended to use the six packets of heroin he would have carried paraphernalia. Thus the jury reasonably could have factored this evidence into its determination of whether the defendant intended to sell heroin.

Additionally, expert testimony indicated that the packaging of the drug in small packets bearing the word "happy" indicated the work of a drug trafficker. The state further introduced evidence establishing that the defendant was interacting with other persons at the time the police found the heroin in his possession.

In light of the foregoing, therefore, we reject the defendant's assertion that the jury improperly inferred intent solely on the basis of the quantity of heroin that he possessed. Rather, we conclude that, from the cumulative evidence presented, including evidence that the defendant possessed an unusually large amount of heroin for a user, and the reasonable inferences drawn therefrom, the jury reasonably could have determined that the defendant possessed heroin with the intent to sell.

The judgment is affirmed.

In this opinion the other judges concurred.