[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
The matter before the court is defendant's motion to suppress items seized from his person during a search incident to his CT Page 5256-WW warrantless arrest, on the ground that there was no probable cause for the arrest.
FINDINGS
After an evidentiary hearing on this motion, the following facts are found:
 At approximately 1:00 p.m. on March 5, 1996, Warren Winkler, a detective with the Willimantic Police Department with 19 years experience on the force, the last six of them as a detective, received a telephone call from a confidential informant (the "informant") whose tips in the past had led to convictions, who advised Winkler that an Hispanic male with a thick mustache, 30 to 35 years old, five feet five inches tall and heavyset (the defendant), was selling heroin in the soup kitchen located in the basement of St. Paul's Church on a daily basis, usually in the morning;
 The informant stated that the informant had observed the sale of narcotics by the defendant in the soup kitchen, and that the informant had, personally, purchased narcotics from the defendant;
 Winkler told the informant, during their March 5 telephone conversation, to call again at such time as the informant actually observed further narcotic sales by the defendant;
 At approximately 10:00 a.m. on March 6, 1996, the informant again called Winkler and said that the defendant, in his 30's, approximately five foot five, with a thick mustache and wearing light colored pants and a light colored trench coat with green corduroy trim with the sleeves rolled up, had made several sales of heroin at the soup kitchen that morning which had been observed by the informant;
 Winkler drew the reasonable inference that the informant was knowledgeable in the mechanics of narcotic sales;
 Immediately after receiving the second phone call from the informant, Winkler and three other Willimantic police officers went to the soup kitchen. Winkler and one of the other officers went into the soup kitchen, where they saw someone who matched the description of the defendant which had been given to Winkler by the informant; CT Page 5256-XX
 No one else in the soup kitchen at that time matched the description of the defendant which had been given to Winkler by the informant;
 When Winkler observed the defendant in the soup kitchen, the defendant was not doing anything illegal, and he did not try to escape when the officers entered the soup kitchen;
Winkler then arrested the defendant;
 Immediately after, and incident to, the arrest, the defendant was searched, and six packets of heroin were found in his left coat pocket;
 As testified to by Winkler, the arrest of the defendant was based solely on the information provided by the informant;
 The neighborhood in which St. Paul's Church is located is not host to heavy drug trafficking; and,
 The Willimantic Police Department sometimes uses undercover officers to observe suspected drug dealers, and it sometimes uses undercover officers to purchase drugs from suspected drug dealers. It could have done either or both of those things in this case, although it did not do either.
INTERMEDIATE DETERMINATIONS DRAWN FROM FINDINGS
From the facts found, the following intermediate determinations are drawn:
 The information which had been provided by the informant to the police in previous matters, which had led to convictions, constituted a sufficient basis to establish the informant's veracity; and,
 The informant's reported personal observation of narcotic sales by the defendant constituted a sufficient basis for the informant's knowledge that the defendant had engaged in illegal narcotic transactions.
These intermediate determinations are relevant for purposes of the so-called "Aguilar-Spinelli" analysis, which is discussed below, which has been used in establishing probable cause for an CT Page 5256-YY arrest or search.
DISCUSSION
If the warrantless arrest of the defendant was valid, then the search of the defendant incident to that arrest was valid. The standard for a warrantless arrest, under § 54-1f(b) of the General Statutes, is whether the arresting officer ". . . has reasonable grounds to believe (the arrestee) has committed or is committing a felony." "Reasonable grounds," as used in §54-1f(b), has been held to have the same meaning as the phrase "probable cause," which is the standard which must be met under the constitutions of both the United States and Connecticut to sustain a warrantless arrest. State v. Cobuzzi, 161 Conn. 371,376 (1971). (Cases dealing with information provided by confidential informants concern four different situations: searches with warrants, searches without warrants, arrests with warrants and arrests without warrants. Despite the multiplicity of contexts, the constitutional standards for probable cause by which such arrests and searches are tested are all the same, even though searches and arrests made without warrants will be subject to closer scrutiny. State v. Barton, 219 Conn. 529 [1991]. For that reason, the fact patterns of cases discussed herein are not necessarily relevant and may not be fully described.)
In State v. Barton, Id., the Supreme Court reviewed the Connecticut and federal law on arrests and searches based on information provided by unnamed informants, and the following is a synopsis of that review:
 Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), established the two-pronged Aguilar-Spinelli test for determining whether information provided by a confidential informant constitutes probable cause. Those prongs are: 1) Is there a "basis of knowledge" for the information provided, such as personal observation by the informant; and, 2) does the informant have veracity, or, in the alternative, has the information provided been shown in some manner (such as corroboration by independent police investigation) to be reliable;
 Illinois v. Gates, 462 U.S. 213, reh. denied, 463 U.S. 1237
(1983), found the two-pronged Aguilar-Spinelli test overly restrictive and declared that, under the United States Constitution, if the two prongs cannot be met, probable cause CT Page 5256-ZZ can nonetheless still be found if the "totality of the circumstances" warrants a finding that ". . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . .";
 State v. Kimbro, 197 Conn. 219 (1985), in which the court noted that the "`. . . totality of the circumstances' analysis set out in Illinois v. Gates . . ." (citations omitted) established for the prosecution an easier-to-meet standard than ". . . the stricter two-prong analysis for the Aguilar-Spinelli
cases which predated Gates." Id., 221. The Kimbro court went on to reject the Gates totality of the circumstances approach and reaffirmed the Aguilar-Spinelli standard for probable cause determinations under the Connecticut Constitution.
In State v. Barton, supra, the Supreme Court overruled its holding in State v. Kimbro, supra, and held that, when theAguilar-Spinelli tests have not been satisfied, a second tier review of the totality of the circumstances can be conducted by a judge to determine if there is a basis, other than theAguilar-Spinelli tests, for probable cause. This motion raises the converse proposition; that is, when the Aguilar-Spinelli tests have been satisfied, a judge can conduct a second tier review of the totality of the circumstances in order to determine whether there is corroboration for the results of the Aguilar-Spinelli
tests, and, if there is no such corroboration, that the judge may then find probable cause lacking.
None of the leading federal or Connecticut cases in this area (Aguilar, Spinelli, Gates and Barton) deals with a set of facts which satisfied the two-prongs of Aguilar-Spinelli, and so none of them has a holding directly on the issue raised by the defendant. (Because Barton adopted, as the test under the Connecticut Constitution, the totality of the circumstances approach which was established by Gates as the test under the United States Constitution, the federal and Connecticut issues relating to probable cause are dealt with in this decision as a unitary issue.) However, then Associate Justice Rehnquist's majority opinion in Gates does offer some guidance on this issue, as follows:
 Nothing in our opinion in any way lessens the authority of the magistrate to draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant; indeed he is freer than under the regime of CT Page 5256-AAA Aguilar and Spinelli to draw such inferences, or to refuse to draw them if he is so minded. (Emphasis added.)
Illinois v. Gates, Id., 240.
The excerpt from Gates is the subject of the following observation in a recent Seventh Circuit opinion:
 Gates and its progeny, however, demand that we consider all the facts available to the police at the time of the arrest, even those that may, in and of themselves, be deficient in some way.
Edwards v. Cabyra, 58 F.3d 290, 293 (7th Cir. 1995).
Research has uncovered only one reported case in which theAguilar-Spinelli tests were met and probable cause was still challenged. State v. Novembrino, 105 N.J. 95 (1987). InNovembrino, with reference to the excerpt from Gates, the court said:
 The Gates majority also observed that the totality of-the-circumstances test provided magistrates with wider discretion to grant or refuse warrants than had been permitted under the Aguilar-Spinelli rules. . .
Id., 118.
In Novembrino, the court found that the two prongs ofAguilar-Spinelli were satisfied by the informant and his information, as follows:
 In this case Detective Higgins' affidavit relies in part on information obtained from an unidentified informant. The affidavit's reference to the informant appears to comply with both prongs of the Aguilar-Spinelli test.
 The informant's veracity is supported by Detective Higgins' unvarnished statement that he "has proven reliable in several investigations (with the information he supplied)." We have in the past accepted a similarly undetailed endorsement of an informant as satisfying the veracity requirement. State v. Perry, supra, 59 N.J. at 390, 283 A.2d 330; compare Stanley v. State, 19 Md. App. 507, 523, 313 A.2d 847, 851 (1974) (where informant satisfied Aguilar's veracity prong with "flying CT Page 5256-BBB colors.") Similarly, the informant's "basis of knowledge" is clearly established by the assertion that "he witnessed `Otto' dealing drugs from his gas station."
Id., 123-24.
After finding that the Aguilar-Spinelli tests had been met, the Novembrino court observed that:
 Although the affidavit's reference to the informant satisfies the Aguilar-Spinelli test, the substantive information obtained from the informant is meager indeed.
Id., 124.
The Novembrino court then left no doubt that, in New Jersey, when the Aguilar-Spinelli tests are met, a second tier review of the totality of the circumstances is permitted by a judge, as follows:
 We emphasize that our conclusion as to the inadequacy of the affidavit, notwithstanding its literal compliance with both prongs of Aguilar-Spinelli, is thoroughly consistent with our application, as a matter of state-constitutional law, of a totality of-the-circumstances test. As Justice Rehnquist observed in Gates, under that standard the issuing judge "is freer than under the regime of Aguilar and Spinelli to draw such inferences, or to refuse to draw them if he is so minded." (Citations omitted.)
Id., 128.
Thus in Novembrino, the only reported case which has come to the court's attention in which a defendant argued that positive readings from the Aguilar-Spinelli tests were not conclusive on probable cause, the court so held. The question now is whether a Connecticut judge is also permitted, in an appropriate case, to review the totality of the circumstances when the Aguilar-Spinelli
tests have been met.
If a review of the totality of the circumstances is to be conducted when the Aguilar-Spinelli tests have been met, that review will generally focus on whether there is corroboration for at least some of the information provided by an informant. TheBarton court explained why corroboration is important when it CT Page 5256-CCC observed that:
 . . . confidential informants are themselves often "criminals, drug addicts, or even pathological liars" whose motives for providing information to the police may range from offers of immunity or sentence reduction, promises of money payments, or "such perverse motives as revenge or the hope of eliminating criminal competition." Because such an informant's reliance on rumors circulating on the street is not unlikely and the veracity of such an informant is questionable . . . . (Citation, footnote and reference omitted.)
State v. Barton, supra, 542-3.
The rationale for independent police corroboration of an informant's tip was further articulated by Judge O'Connell in his dissent in State v. Santiago, 27 Conn. App. 741 (1992), as follows:
 The defendant was arrested solely on the word of a drug user who was a paid police informant. Although an informant's tip may be used in combination with information gathered by independent police corroboration to establish probable cause, the tip alone is not sufficient to justify intrusion on a person's constitutional rights. The evil of eliminating the corroboration requirement is that the probable cause determination is thereby delegated to the confidential informant who is insulated from cross-examination. The protection that is afforded by a neutral and detached magistrate's eventual involvement in the process of determining probable cause is abolished. (Citation omitted.)
Id., 53.
The following excerpt from State v. Conley, 31 Conn. App. 548
(1993), not only attests to the importance of corroboration, it also suggests that corroboration is essential whenever an arrest is based on information from a confidential informant, without expressly limiting the need for corroboration to cases in which the Aguilar-Spinelli tests have not been met:
 When an informant's tip underlies an arrest, the trial court's task is to review the "totality of the circumstances" to determine the existence of probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v.CT Page 5256-DDD Barton, 219 Conn. 529, 594 A.2d 917 (1991). This inquiry involves an assessment of "the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . ." Illinois v. Gates, supra, 284; State v. Barton, supra. The informant's "veracity," "reliability," and "basis of knowledge" are highly relevant. State v. Barton,
supra, 537; State b.[v.] Hunter, supra, 135. Moreover, "[c]orooboration of an informant's tip by independent police information has long been considered critical in determining probable cause. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Draper v. United States, 357 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)." State v. Hunter,
supra, 134.
State v. Conley, supra, 555.
The excerpts from Barton, the dissent in Santiago and Conley
leave no doubt that federal and Connecticut law favor corroboration. However, because none of those cases, or any other federal or Connecticut case of which the court is aware, deals with facts which passed Aguilar-Spinelli muster, our case law is not clear on the question whether the bias in favor of corroboration permits a second tier review of the totality of the circumstances when the Aguilar-Spinelli tests have been met.
The only language in a Connecticut case which can be read to suggest that a second tier review cannot be conducted when theAguilar-Spinelli tests have been met is the following fromBarton:
 In essence, our adoption of a "totality of the circumstances" analysis of the probable cause requirement of article first, 7, of our constitution means simply this: When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. CT Page 5256-EEE
State v. Barton, Id., 544.
The argument that the excerpt from Barton precludes a second tier review when the Aguilar-Spinelli tests have been met is constructed as follows: the excerpt explains that a judge should review an affidavit to see if it complies with the Aguilar-Spinelli
tests; the excerpt then explains what a judge should do if the Aguilar-Spinelli tests have not been met (that is, conduct a review of the totality of the circumstances), but does not explain what further steps a judge should take if the Aguilar-Spinelli
tests are met; ergo, a judge should not take any further steps if the Aguilar-Spinelli tests have been met.
While the simplicity of that argument is appealing, it ignores the fact that Barton presented facts which did not meet the Aguilar-Spinelli tests, so that the Barton court was not called upon to rule, or even comment, on the question of what a judge is permitted to do after those tests have been met.
Accordingly, it is concluded that the excerpt from Barton
does not constitute implied dicta to the effect that a second tier review cannot be conducted when the Aguilar-Spinelli tests have been met.
Considering: 1) Justice Rehnquist's comment in Gates that a magistrate in the post-Aguilar-Spinelli era ". . . is freer than under the regime of Aguilar and Spinelli to draw . . . inferences, or to refuse to draw them if he is so minded . . ."; and, 2) the strong federal and Connecticut policy favoring corroboration; and, 3) the absence of precedent that a second tier review cannot be conducted when the Aguilar-Spinelli tests have been met, it is concluded that, even when the letter of theAguilar-Spinelli tests has been met, a judge may proceed to conduct a review of the totality of the circumstances before deciding if probable cause exists.
Turning to the facts of this case (which, as noted above, meet the Aguilar-Spinelli tests), they are, as in Novembrino,
"meager indeed." In fact, as Detective Winkler testified, the arrest of the defendant was based solely on information provided by the informant. Thus in this case there was no independent police investigation to corroborate any portion of the informant's report, and there was apparently nothing known to the police from other investigations which corroborated any part of CT Page 5256-FFF the informant's report.
As Detective Winkler testified, the Willimantic Police Department sometimes uses undercover officers to observe, and/or to attempt to purchase drugs from, suspected drug dealers; the department could have done either in this case; and, it did not do either. Thus, there were available to the police routine methods of corroborating parts of the informant's report, none of which was employed.
More importantly, there was nothing in the facts known to the police immediately before the defendant's arrest which suggested there was a risk to their ability to effect the arrest of the defendant, or to gather evidence of his alleged crimes, if the arrest were postponed pending a prompt "corroborating" investigation. In fact, the informant had advised Detective Winkler that the defendant sold heroin every day, usually during the same part of the day and at the same place, so that the police could have reasonably presumed that a slight delay would cause no harm.
In this case the facts satisfying Aguilar-Spinelli could not be leaner. Routine investigative methods were available and could have been completed promptly. Attempts to corroborate the informant's tip were likely to help establish the defendant's guilt or innocence. Most significantly, the delay required for corroboration would have been slight and would not likely have prevented the suspect's subsequent arrest or hindered the gathering of evidence against him. Under these facts, it is held that some corroboration of the informant's information, whether from independent investigation or from information already in the hands of the police from other investigations, was required to establish probable cause. In the absence of such corroboration, it is held that probable cause did not exist for the defendant's arrest.
CONCLUSION
The defendant's motion to suppress is granted.