STATE OF CONNECTICUT *v.* PEDRO SANTIAGO
(9950)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued October 30, 1991—decision released May 13, 1992

742

*Pamala J. Favreau,* deputy assistant public defender, for the appellant (defendant).

*Margaret G. Radionovas,* deputy assistant state's attorney, with whom, on the brief, were, *Mark S. Solak,* state's attorney, and *Roger Caridad,* deputy assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals challenging the denial of his motion to suppress evidence pursuant to General Statutes § 54-94a.[1] The defendant was convicted of possession of a narcotic substance in violation of General Statutes § 21a-279 (a). The defendant was sentenced to a five year term of imprisonment, to run consecutive to any sentence then being served. The sole issue in this appeal is whether the trial court properly denied the motion to suppress narcotics. The defendant claims that (1) the trial court improperly found probable cause to arrest him allegedly on the sole basis of an uncorroborated statement from a confidential informant, and (2) the warrantless search was not justified in the absence of probable cause. Because we disagree with the defendant's first claim, we need not reach the second.

[1] General Statutes § 54-94a provides in pertinent part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ."

The following evidence was presented at the suppression hearing. On May 25, 1990, Officers Dennis Griswold and Larry Kozikowski of the Willimantic police department approached an individual who had often served as a confidential informant. On previous occasions, the informant had given Griswold information leading to fifteen arrests for narcotics violations.[2] Griswold was a detective investigating narcotics violations for four years prior to the incident, and had a total of fifteen years of experience as a police officer. Griswold testified that he had attended federal, state, and local schools that train narcotics investigators, and had made approximately 1000 narcotics arrests. The officers asked the informant if he had any information for them that evening. In response, the informant told them that he had just left the Shark Club, a local bar, where he had seen the defendant selling "dope and coke," vernacular for heroin and cocaine. Griswold knew that the Shark Club was a popular location for the sale of illegal narcotics. The informant identified the defendant by name. Griswold recognized the name of the defendant as a convicted narcotics dealer who was on parole, and was aware that the defendant had been arrested on prior occasions for drug offenses.

After receiving the information from the informant, the officers returned to their car and radioed police headquarters. Within minutes of receiving the information from the informant, they entered the bar and located the defendant. They approached him and asked him to come outside with them. They then took the defendant by the arms and escorted him outside. Once outside, the officers searched the defendant. In one of

---

[2] At the hearing, the state produced a detailed list kept by Griswold of persons arrested as a result of information provided by this informant on previous occasions. The list also included the date of each arrest and the offense on which each arrest was based. All of the arrests listed were for drug related offenses, and more than half were for the sale of illegal narcotics.

his pockets, the officers found five small plastic bags containing white powder, which field tested positive as heroin. The officers then arrested the defendant and took him to police headquarters where he was more thoroughly searched.[3] This search at police headquarters produced three small plastic packets, which tests proved to be cocaine. Thereafter, Griswold completed an affidavit of probable cause to support the warrantless search.[4]

---

[3] We note that "[a] formal arrest need not always chronologically precede the search in order for the search to be valid. Where there is probable cause to arrest, a search before an arrest is reasonable under the fourth amendment as long as the arrest and search and seizure are substantially contemporaneous, and are integral parts of the same incident. *Rawlings* v. *Kentucky,* 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980); *State* v. *Federici,* 179 Conn. 46, 54–55, 425 A.2d 916 (1979)." *State* v. *Kaplan,* 20 Conn. App. 183, 188, 565 A.2d 11 (1989).

[4] The text of Griswold's affidavit of probable cause is as follows: "[O]n 5-23-90, at approximately 10:00 p.m. this Detective was contacted by a credible and reliable informant who stated the following. That Pedro Santiago was now inside the Shark Club, Main Street, Willimantic, CT, in possession of both heroin and cocaine, which he was selling inside the bar. That Pedro Santiago is known by this Detective, having arrested him numerous times in the past. That the informant further stated that he/she knew that the accused was in possession of heroin and cocaine because he/she had just been inside the said bar and had observed him selling the said drugs to persons inside the bar. That this Detective and Officer Kozikowski immediately drove to the Shark Club Bar. That this Detective had knowledge that numerous drug dealers in our area are selling their illegal drugs (heroin/cocaine) in the Shark Club and that Pedro Santiago, a convicted drug dealer is now on Parole in the State of Connecticut. That this Detective and Officer Kozikowski entered the said bar and located the accused at the bar. That this Detective searched the accused and found him in possession of 5 glassine packets of what field tested positive for heroin. The accused was arrested and taken to H.Q. That the accused stated that this Detective put the heroin in his pocket. (The 5 packets of heroin [were] found in the left inside pocket of the accused.) That at H.Q. this Detective checked the accused further and found 3 small plastic packets of what field tested positive for cocaine. The 3 packets of cocaine were found in the rear area inside the accused's underwear. The accused again stated that the police put them there. The accused was arrested for possession of narcotics heroin/cocaine, 21a-279a. This report is the truth to the best of my knowledge and ability . . . ."

"Under both the federal and state constitutions, a warrantless search is per se unreasonable, subject to a few well defined exceptions. *State* v. *Dukes,* 209 Conn. 98, 121, 547 A.2d 10 (1988); *State* v. *Januszewski,* 182 Conn. 142, 151–52, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981)." *State* v. *Quinones,* 21 Conn. App. 506, 510, 574 A.2d 1308 (1990). One of these well defined exceptions is a search incident to a lawful arrest. "It is an established rule that a properly conducted warrantless search incident to a lawful arrest is not illegal. . . . Section [54-1f[5]] of the General Statutes authorizes a police officer to arrest, without a warrant, 'any person who such officer has reasonable grounds to believe has committed or is committing a felony.' " (Citations omitted.) *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978); *State* v. *Velez,* 215 Conn. 667, 672, 577 A.2d 1043 (1990).[6]

In *State* v. *Barton,* 219 Conn. 529, 546, 594 A.2d 917 (1991), our Supreme Court adopted the "totality of the circumstances" analysis of the probable cause requirement as set forth in *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).[7] The court set

---

[5] General Statutes § 54-1f provides in pertinent part: "ARREST WITHOUT WARRANT. . . . (b) Members of . . . any local police department . . . shall arrest, without previous complaint or warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony."

[6] Because of the procedural posture of this case, our review cannot be based on *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and its progeny.

[7] Although *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991), had not yet been decided as of the trial court's decision on the defendant's motion to suppress, the state asserts in its brief that the trial court's finding can be supported by the "totality of the circumstances" analysis of probable cause as adopted in *State* v. *Barton,* supra. In his reply brief, the defendant disputes this assertion. The present case must be decided under *State* v. *Barton,* supra, because it has been held that its principles have retroac-

forth the analysis as follows. "In essence, our adoption of a 'totality of the circumstances' analysis of the probable cause requirement of article first, § 7, [of the Connecticut constitution] means simply this: When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." *State* v. *Barton,* supra, 544–45. Indeed, "the reviewing court should pay great deference to the trial court's determination regarding the existence of probable cause." *State* v. *Velez,* supra, 673.

tive effect. *State* v. *Johnson,* 219 Conn. 557, 594 A.2d 933 (1991); see *State* v. *Ryerson,* 201 Conn. 333, 340, 514 A.2d 337 (1986); *State* v. *Anziano,* 26 Conn. App. 667, 672, 603 A.2d 415 (1992); *State* v. *Marsala,* 26 Conn. App. 423, 424–25, 601 A.2d 542 (1992); *State* v. *Payne,* 25 Conn. App. 428, 431, 594 A.2d 1035 (1991).

On the basis of the evidence, the trial court found that the officers had probable cause for their belief that the defendant was in possession of illegal narcotics at the time of the search. The court considered the facts that the defendant had been previously arrested for a narcotics violation, and the informant had given information leading to fifteen narcotics arrests. The court further found that although the informant in the present case did not explicitly tell the officers that he saw the actual narcotic substances, Griswold was entitled to draw the inference that the informant would recognize a drug transaction when he saw one because both the officer and the informant were familiar with drug transactions. Consequently, the trial court found that the arrest was based on probable cause and the warrantless search was valid, and denied the defendant's motion to suppress.

In *McCray* v. *Illinois*, 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967), the United States Supreme Court examined whether information gained from a confidential informant was sufficient to establish probable cause so as to validate an arrest and subsequent warrantless search. In *McCray*, the informant had supplied the arresting officers with information about narcotics activities on at least fifteen prior occasions, with the information leading to numerous arrests and convictions. Id., 303. The arresting officer was familiar with the petitioner. Id., 302. After receiving information from the informant that the petitioner would be in a certain location, the arresting officers located the petitioner there. Id. The court stated that "[u]pon the basis of those circumstances, along with the officers' personal observations of the petitioner, the court was fully justified in holding that at the time the officers made the arrest 'the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a

prudent man in believing that the petitioner had committed or was committing an offense. . . .' " (Citations omitted.) Id., 304–305; see also *Draper* v. *United States*, 358 U.S. 307, 312–14, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959) (information from a reliable informant verified by direct observation can give police probable cause to make warrantless arrest); *United States* v. *James*, 466 F.2d 475, 477 (D.C. Cir. 1972) (identifying information coupled with the arresting officer's verification of this information is adequate probable cause for an arrest). In both *McCray* v. *Illinois*, supra, and *Draper* v. *United States*, supra, the court sanctioned the warrantless arrest made on the basis of information from confidential informants similar to the information provided by the informant in the present case.[8]

Here, the informant told the officers that he actually saw the defendant selling narcotics inside the bar. Furthermore, there was other corroboration of the informant's tip. The bar where the defendant was seen selling drugs was known to the police as a place where drugs were frequently sold, and the defendant was known to the police as a narcotics dealer who had been arrested and convicted in the past for drug offenses. There was sufficient evidence before the officers to constitute probable cause, despite their lack of additional investigation.[9] The following facts establish the basis

---

[8] We stress that the present case involves a confidential informant known to the police, not an unknown informant supplying an anonymous tip.

[9] The dissenting opinion cites *State* v. *Delmonaco*, 194 Conn. 331, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984), which was decided under the *Aguilar-Spinelli* framework as set forth in *State* v. *Kimbro*, 197 Conn. 219, 496 A.2d 498 (1985). In *State* v. *Delmonaco*, supra, 340, our Supreme Court noted that if a judge authorized a search based on an affidavit that did not sufficiently state the informant's "basis of knowledge," the judge's role as finder of probable cause would be usurped. It is clear that the judge is responsible for determining whether probable cause exists. In the present case, the affidavit was not wholly lacking facts that establish the informant's basis of knowledge, and the concern of the court in *State* v. *Delmonaco*, supra, is not implicated.

on which the officers determined that the information was reliable: (1) the informant was known to Griswold; (2) the informant had given reliable information to Griswold leading to fifteen arrests for narcotics offenses in the past; (3) Griswold was aware that the defendant had been convicted of a narcotics offense in the past;[10] and (4) Griswold knew that the Shark Club was a popular location for the sale of illegal narcotics. The following facts describe the factual basis of the informant's knowledge: (1) the informant identified the defendant by name; (2) the informant witnessed the alleged narcotics sale firsthand; (3) the informant specified "dope and coke" as the exact narcotics that the defendant was selling; (4) both Griswold and the informant were familiar with the manner in which narcotics sales were carried out; and (5) the informant specified exactly where the officers could locate the defendant, and the defendant was, in fact, there.

The defendant stresses that the informant did not give the officers any of the "predicate facts" that formed the basis for his information, and therefore the officers lacked sufficient knowledge of the factual basis of his information. The defendant suggests that had the informant described the drugs, the identity of the purchasers, or where the defendant was seated in the bar, there would have been a sufficient basis to find probable cause. While such evidence may have made the state's case for probable cause stronger, the absence of that evidence does not necessarily preclude a finding of probable cause under the "totality of the

---

[10] "[E]arlier narcotics related convictions of the defendant can properly be considered when determining the reliability of an informant's tip. [T]he prior arrest record, pertaining as it did to the reputation of the defendant, clearly was a practical consideration of everyday life upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Tulli*, 14 Conn. App. 356, 361, 541 A.2d 515, cert. denied, 208 Conn. 809, 545 A.2d 1105 (1988).

circumstances" analysis. In applying the "totality of the circumstances" analysis, the trial court is free to determine whether the officers had probable cause based not only on the facts available to the officers, but on reasonable inferences from those facts. Because both Griswold and the informant were familiar with narcotics transactions, it is a reasonable inference that when the informant told Griswold that he saw the defendant selling "dope and coke," he was referring to cocaine and heroin. Since the informant was familiar with drug transactions, it is reasonable also to infer that he knew how narcotics were packaged and their appearance. Given the facts presented and the reasonable inferences they suggest, the trial court did not find probable cause on the sole basis of an uncorroborated statement of the confidential informant. There was corroborative evidence. We conclude that the court properly determined that probable cause existed under the totality of the circumstances.

The judgment is affirmed.

In this opinion DUPONT, C. J., concurred.

O'CONNELL, J., dissenting. I cannot agree with the majority that independent police corroboration of the informant's tip was not required.

It is important to note that because of the procedural history of this case we are not concerned with the lesser standard of reasonable articulable suspicion to sustain a stop and frisk under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Instead, the state must satisfy the much higher burden of demonstrating that the police had probable cause to arrest the defendant when they seized him in the Willimantic bar. I believe that this burden has not been met.

I agree that this case must be decided under the principles of *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917

(1991), as that case adopts the principles of *Illinois* v. *Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) into Connecticut law. I cannot agree, however, with the extremely broad interpretation that the majority gives to the *Gates-Barton* totality of the circumstances doctrine. *Gates* and *Barton* both are aimed at correcting the overly technical application of the *Aguilar-Spinelli*[1] test in determining an informant's reliability.[2] The two prongs of the *Aguilar-Spinelli* test were not abolished and are still part of Connecticut probable cause law and remain the starting point for determining an informant's veracity and basis of knowledge. "In *Gates,* the [United States] Supreme Court reaffirmed that the 'veracity' or 'reliability' and the 'basis of knowledge' inquiries formulated in *Aguilar* remain 'highly relevant' in the determination of probable cause and should be regarded as 'closely intertwined issues that may usefully illuminate the common sense, practical question' of the existence of probable cause to believe that contraband or evidence is located in a particular place. . . . The *Gates* court abandoned only a 'rigid compartmentalization' of the inquiries and denied that the court had ever intended them to be understood as 'entirely separate and independent requirements to be rigidly exacted in every case.' " (Citation omitted.) *State* v. *Barton,* supra, 537.

If the *Aguilar-Spinelli* test is not satisfied, *Gates* and *Barton* permit the trial court to look at other circumstances (i.e., totality of circumstances) to satisfy the informant's basis of knowledge and veracity. If the *Aguilar-Spinelli* prongs are satisfied, however, there is no need to look further, and the totality of circumstances doctrine never comes into play.

---

[1] *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

[2] The two prongs of the *Aguilar-Spinelli* test require a magistrate to examine an informant's (1) basis of knowledge and (2) veracity or reliability in determining whether probable cause exists.

In the present case, I do not question the informant's reliability or his basis of knowledge. The *Aguilar-Spinelli* test is more than adequately satisfied. *Gates* and *Barton* have no further relevance to this case. I find nothing in *Gates* or *Barton* that abolishes the long established requirement that an informant's tip must be corroborated by independent police investigation.[3] To the contrary, *Gates* devotes an entire section to the importance of corroboration. In the words of Chief Justice Rehnquist: "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Illinois v. Gates,* supra, 241.

The majority relies on *McCray* v. *Illinois,* 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967); *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959); and *United States* v. *James,* 466 F.2d 475 (D.C. Cir. 1972). These cases do not support the majority decision that independent corroboration is unnecessary. Instead, each of the cited cases carefully details the independent action taken by the police to corroborate the unnamed informant's tip and emphasizes the importance of such corroboration.

The issue in *McCray* v. *Illinois,* supra, was disclosure of the confidential informant's name, not the existence of probable cause for arrest. The court devoted one brief paragraph to the probable cause issue in which it emphasized that probable cause existed because of the combination of the information furnished by the informant *"along with the officers' personal observation of the petitioner."* (Emphasis added.) Id., 304.

*Draper* v. *United States,* supra, is probably the leading case in this country on the establishment of proba-

---

[3] In 1 W. LaFave, Search and Seizure § 3.3 (f), the post-*Gates* corroboration requirements are discussed at length.

ble cause through police confirmation of an informant's tip. The informant in *Draper* furnished exacting details, most of which were confirmed by the police before a warrant was issued. The Supreme Court held that it was the personal verification by the police officer of such details that gave the officer probable cause to believe an offense had been committed. Id., 313.

*United States* v. *James,* supra, is a brief per curiam opinion devoid of legal analysis but recognizing the importance of independent corroboration by the police and relying expressly on *Draper* v. *United States,* supra, and *McCray* v. *Illinois,* supra. The one relevant sentence in the opinion reads, "Under the Supreme Court decisions of *McCray* v. *Illinois* [supra] and *Draper* v. *United States* [supra] identifying information supplied by a known informant *coupled with the arresting officer's verification* of this information is adequate probable cause for an arrest." (Emphasis added.) *United States* v. *James,* supra, 477.

There is no justification in this case to dispense with the rule requiring independent police corroboration of an unnamed informant's tip. The defendant was arrested solely on the word of a drug user who was a paid police informant. Although an informant's tip may be used in *combination* with information gathered by independent police corroboration to establish probable cause, the tip *alone* is not sufficient to justify intrusion on a person's constitutional rights. The evil of eliminating the corroboration requirement is that the probable cause determination is thereby delegated to the confidential informant who is insulated from cross-examination. The protection that is afforded by a neutral and detached magistrate's eventual involvement in the process of determining probable cause is abolished. In *State* v. *Delmonaco,* 194 Conn. 331, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984), our Supreme Court addressed the

importance of the first prong of the *Aguilar-Spinelli* test, namely, the informant's basis of knowledge. The court stated: "If a judge were to authorize a search based solely on allegations provided by an otherwise credible person without requiring a showing of the underlying circumstances that serve as a basis for the informant's allegations, the informant would usurp the judge's role as the finder of probable cause." Id., 340. Although *Delmonaco* was decided prior to *State* v. *Barton,* supra, the concern and reasoning of the court regarding delegation of the probable cause determination to an informant are still relevant and accurate in probable cause analyses.

Even if we consider the fact that the police found the defendant in the bar to be an independent investigation, the arrest would still not pass constitutional muster. The additional information acquired by the officers must in some sense be corroborative of the informant's tip that the defendant has committed or is committing the crime. *Whitely* v. *Warden,* 401 U.S. 560, 567, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971). Here, all that the police saw was the defendant in a bar—a totally innocuous activity. Perhaps further observation by the officers, or a controlled buy, would have given the required corroboration. But neither further observation nor a controlled buy took place, leaving the police with nothing but a man in a bar. This did not add up to probable cause. Further, the search cannot be sustained as incident to a valid arrest unless the arrest itself was valid; *State* v. *Velez,* 215 Conn. 667, 672, 577 A.2d 1043 (1990); 4 F. Wharton, Criminal Evidence § 725; and, the fruits of the search cannot be used to sustain a finding of probable cause. *Beck* v. *Ohio,* 379 U.S. 89, 96, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *State* v. *Spellman,* 153 Conn. 65, 71, 212 A.2d 413 (1965).

The majority relies, in part, on the fact that the bar in question had a reputation as a location for the sale

of narcotics. I agree with Justice Glass in his dissenting opinion in *State* v. *Cofield,* 220 Conn. 38, 50, 595 A.2d 1349 (1991), that a history of past criminal activity in a locality does not transform otherwise innocent-appearing circumstances into circumstances justifying the suspension of the constitutional rights of anyone who may subsequently be there. See also *People* v. *Aldridge,* 35 Cal. 3d 473, 479, 674 P.2d 240, 198 Cal. Rptr. 538 (1984). Moreover, the reputation of the bar does not constitute conduct of the defendant. *People* v. *Bower,* 24 Cal. 3d 638, 645, 597 P.2d 115, 156 Cal. Rptr. 856 (1979).

I would vacate the conviction and remand the case to the trial court with instruction to grant the motion to suppress.

Accordingly, I respectfully dissent.