## STATE OF CONNECTICUT *v.* SERGIO VELASCO
## (AC 16466)

O'Connell, C. J., and Spear and Hennessy, Js.

Argued September 15, 1997—officially released January 6, 1998

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Mark S. Solak*, state's attorney, and *Mark A. Stabile*, supervisory assistant state's attorney, for the appellant (state).

*Gregory A. Klimaszewski*, with whom, on the brief, was *Christina M. Andreozzi*, for the appellee (defendant).

*Opinion*

O'CONNELL, C. J. The state, with the trial court's permission,[1] appeals from the dismissal of the case, following the granting of the defendant's motion to suppress evidence.[2] The state claims that the evidence at issue was properly seized by the police and, therefore, the trial court improperly granted the defendant's

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

[2] The items sought to be suppressed were (1) contraband consisting of six plastic bags containing heroin, (2) $420, (3) a beeper, (4) a cellular phone, (5) oral or written statements made by the defendant and (6) pieces of identification seized from the defendant.

motion to suppress. We reverse the trial court's decision and remand the case for further proceedings.

The trial court found the following relevant facts. "At approximately 1 p.m. on March 5, 1996, Warren Winkler, a detective with the Willimantic police department with nineteen years experience on the force . . . received a telephone call from a confidential informant (informant), whose tips in the past had led to convictions, who advised Winkler that a Hispanic male with a thick mustache, thirty to thirty-five years old, five feet five inches tall and heavyset (defendant) was selling heroin in the soup kitchen located in the basement of St. Paul's Church on a daily basis, usually in the morning. The informant stated that the informant had observed the sale of narcotics by the defendant in the soup kitchen, and that the informant had personally purchased narcotics from the defendant. Winkler told the informant during their March 5 telephone conversation to call again at such time as the informant actually observed further narcotic sales by the defendant.

"At approximately 10 a.m. on March 6, 1996, the informant again called Winkler and said that the defendant, in his thirties, approximately five foot five with a thick mustache and wearing light colored pants and a light colored trench coat with green corduroy trim [and] the sleeves rolled up, had made several sales of heroin at the soup kitchen that morning that had been observed by the informant. Winkler drew the reasonable inference that the informant was knowledgeable in the mechanics of narcotic sales. Immediately after receiving the second telephone call from the informant, Winkler and three other Willimantic police officers went to the soup kitchen where they saw someone who matched the description of the defendant that had been given to Winkler by the informant. No one else in the soup kitchen at that time matched the description of the defendant that had been given to Winkler by the

informant. When Winkler observed the defendant in the soup kitchen, the defendant was not doing anything illegal, and he did not try to escape when the officers entered the soup kitchen. Winkler arrested the defendant. Immediately after and incident to the arrest, the defendant was searched, and six packets of heroin were found in his left coat pocket. As testified to by Winkler, the arrest of the defendant was based solely on the information provided by the informant."

The defendant filed a motion to suppress evidence seized from him as well as any statements made by him on the ground that they were the fruit of an arrest conducted without probable cause. The defendant argued that such an arrest violated the fourth amendment to the United States constitution and article first, §§ 7 and 8, of the Connecticut constitution.

The controlling issue in this case is whether the police lawfully arrested the defendant. General Statutes § 54-1f (b) authorizes a police officer to make a warrantless arrest of "any person who the officer has reasonable grounds to believe has committed or is committing a felony." The phrase "reasonable grounds to believe" is to be equated with probable cause. *State* v. *Love*, 169 Conn. 596, 599, 363 A.2d 1035 (1975). "Under both the federal and state constitutions, a warrantless search is per se unreasonable, subject to a few well defined exceptions. . . . One of these well defined exceptions is a search incident to a lawful arrest. It is an established rule that a properly conducted warrantless search incident to a lawful arrest is not illegal." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago*, 27 Conn. App. 741, 745, 610 A.2d 666, cert. denied, 223 Conn. 906, 610 A.2d 179 (1992).[3]

---

[3] The author of this opinion is aware that he dissented in *State* v. *Santiago*, supra, 27 Conn. App. 750–55. Despite the analysis articulated in that dissent, the author now accepts the majority opinion as the law of Connecticut and has written this opinion from that viewpoint.

Moreover, "[a] formal arrest need not always chronologically precede the search in order for the search to be valid. Where there is probable cause to arrest, a search before an arrest is reasonable under the fourth amendment as long as the arrest and search and seizure are substantially contemporaneous, and are integral parts of the same incident." *State* v. *Kaplan*, 20 Conn. App. 183, 188, 565 A.2d 11 (1989).

Our inquiry into whether probable cause to arrest the defendant existed, on the facts found by the trial court, begins with an examination of the *Aguilar-Spinelli* test.[4] In these two cases, the United States Supreme Court created a two-pronged test to determine the constitutionality of both arrests and ultimate seizures that are made as a result of information that is furnished to police by an informant. The two prongs of the test are (1) whether the informant's veracity or reliability is established and (2) whether there is a basis of knowledge for the information provided.

Over time, the United States Supreme Court found the *Aguilar-Spinelli* test unduly restrictive and established the more relaxed "totality of the circumstances" test for ascertaining probable cause. *Illinois* v. *Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). In its adoption of the totality of the circumstances test, the United States Supreme Court recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." (Internal quotation marks omitted.) Id., 235.

"The rigorous inquiry into the *Spinelli* prongs and the complex superstructure of evidentiary and analytical

---

[4] *Aguilar* v. *Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

rules that some have seen implicit in our *Spinelli* decision, cannot be reconciled with the fact that many warrants are—quite properly . . . issued on the basis of nontechnical, common-sense judgments of [magistrates] applying a standard less demanding than those used in more formal legal proceedings." (Citation omitted.) Id., 235–36.

*Gates* stands for the proposition that a strict application of the *Aguilar-Spinelli* test would greatly diminish police use of informants' tips. Consequently, the totality of the circumstances test was created so that police would not be excessively hampered in making probable cause determinations when conducting searches and making arrests. Thus, it is clear that *Gates* was intended to make probable cause findings easier, rather than more difficult.[5] The *Gates* court stated that "the direction taken by decisions following *Spinelli* poorly serves [t]he most basic function of any government: to provide for the security of the individual and of his property. . . . The strictures that inevitably accompany the two-pronged test cannot avoid seriously impeding the task of law enforcement . . . . If, as the Illinois Supreme Court apparently thought, that test must be rigorously applied in every case, anonymous tips would be of greatly diminished value in police work. Ordinary citizens, like ordinary witnesses . . . generally do not provide extensive recitations of the basis of their everyday

---

[5] The dissent relies on *Massachusetts* v. *Upton*, 466 U.S. 727, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984). We conclude that *Upton* is not inconsistent with this opinion because it remains compatible with the intent of *Illinois* v. *Gates*, supra, 462 U.S. 213. Following in the spirit of *Gates*, the *Upton* court simply sought to facilitate the finding of probable cause. The United States Supreme Court's determination that probable cause existed on the facts of that case followed the Supreme Judicial Court of Massachusetts' failure to make such a finding, despite the existence of other relevant indicia of reliability sufficient to substantiate the informant's tip. *Massachusetts* v. *Upton*, supra, 734. In using the totality of the circumstances test, our decision remains consistent with both *Gates* and *Upton*, and we conclude that probable cause does exist on the facts found by the trial court.

observations. Likewise, as the Illinois Supreme Court observed in this case, the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise perfect crimes. While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not." (Citations omitted; internal quotation marks omitted.) Id., 237–38.

Analogous to a probable cause hearing pursuant to General Statutes § 54-46a (b), during which a defendant is not permitted to present evidence, the totality of the circumstances analysis is conducted by magistrates and police to determine whether probable cause exists when there is a deficiency in the *Aguilar-Spinelli* prongs, not to negate probable cause after the informant's veracity and basis of knowledge have already been established.

Under the totality of the circumstances test, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates* v. *Illinois*, supra, 426 U.S. 238–39.

While *Gates* involved information that was provided in an affidavit, our Supreme Court has recognized that

it is not always reasonably practicable to obtain a warrant. Indeed, in *State* v. *Kimbro*, 197 Conn. 219, 230–31, 496 A.2d 498 (1985), our Supreme Court stated, "Where, in warrantless arrests or searches, the police involved, in effect, act as their own magistrate in the determination of the existence of probable cause, obviously fourth amendment protections still apply." The probable cause analysis that is conducted to ensure a lawful search or seizure must be the same whether it is carried out by a magistrate or by the police. See also *State* v. *Perry*, 195 Conn. 505, 513–14, 488 A.2d 1256 (1985).

Initially, Connecticut declined to follow the more relaxed approach of *Gates* in cases that implicated article first, § 7, of the Connecticut constitution. *State* v. *Kimbro*, supra, 197 Conn. 236. Our Supreme Court later revisited the issue, however, and adopted the totality of the circumstances test.[6] The court held that "[i]f the warrant affidavit *fails* to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists." (Emphasis added.) *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991) (en banc).

If the *Aguilar-Spinelli* prongs are not satisfied, the sole purpose of the totality of the circumstances test is to provide a secondary vehicle to establish the informant's credibility *after* it is found to be lacking under the second prong of the *Aguilar-Spinelli* analysis. This proposition is supported by the statement in *Gates* that "[the two prongs of the *Aguilar-Spinelli* test] are better

[6] We understand that this jurisdiction has adopted the totality of the circumstances test . The phrase *Aguilar-Spinelli* is used frequently in this opinion because its components have been subsumed under the totality of the circumstances test, and are the initial factors to be considered therein.

understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a *deficiency* in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (Emphasis added.) *Illinois* v. *Gates*, supra, 462 U.S. 233.

In the present case, the trial court made the following additional factual findings: (1) "The information which had been provided by the informant to the police in previous matters, which had led to convictions, constituted a sufficient basis to establish the informant's veracity; and [2] the informant's reported personal observation of narcotics sales by the defendant constituted a sufficient basis for the informant's knowledge that the defendant had engaged in illegal narcotic transactions." The trial court concluded that those findings adequately described the factual basis for the informant's information and that such information was reliable. Therefore, the trial court's findings, in effect, established probable cause based on the *Aguilar-Spinelli* factors and further inquiry was unwarranted. The trial court's attempt to negate its finding of probable cause by introducing a second level of review under the totality of the circumstances was clearly erroneous.

It is also apparent that the trial court's holding in the present case relied on conclusions that went far beyond the limited scope of probable cause. "The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." (Internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 513, 610 A.2d 1113 (1992). Although satisfied that the *Aguilar-Spinelli* prongs were met, the trial court nevertheless granted the defendant's motion to suppress because the court felt that "[a]ttempts to corroborate the informant's tip were likely to help establish the defendant's

guilt or innocence." Because neither guilt nor innocence is an appropriate consideration when making a probable cause determination, the trial court went too far.

The trial court failed to recognize that the function of the totality of the circumstances review under *Barton* is to determine whether an informant's statement is reliable when such reliability is lacking according to the *Aguilar-Spinelli* factors. Instead, the trial court used this "second tier review" as a method to corroborate information *already found to be reliable.* The trial court reasoned that if such information cannot be corroborated, probable cause cannot be found. It is axiomatic that if the trial court found it necessary to corroborate the informant's reliability, then it could not have first satisfied the reliability prong of the *Aguilar-Spinelli* test. In fact, our Supreme Court has held that, "when an informant has a track record of providing reliable information, the 'previous reliability of an informant, though not constitutionally required, is a basis for crediting his information.'" *State* v. *Morrill,* 205 Conn. 560, 567, 534 A.2d 1165 (1987);[7] see *State* v. *Ruscoe,* 212 Conn. 223, 230–31, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990). In this case, the police were dealing with a known informant whose tips had led to convictions. For these reasons, his information was reliable and, thus, corroboration was unnecessary.[8]

---

[7] In *Morrill,* as here, the reliability prong of the *Aguilar-Spinelli* test was satisfied because the known informant had a history of providing information that led to convictions. *State* v. *Morrill,* supra, 205 Conn. 567.

[8] The trial court's conclusion that the informant's tip was reliable was substantiated by its findings that Winkler was a nineteen year veteran of the police force and that he had previously investigated approximately 1000 narcotics cases. The trial court further found that Winkler had known the informant for five years and that the informant had previously purchased narcotics from the defendant. At the time of the informant's telephone call to the police, the defendant possessed and was selling heroin in the soup kitchen. The police arrived at the soup kitchen within ten minutes of the informant's telephone call and did not have time to set up surveillance.

We conclude that probable cause to arrest existed on the facts found by the trial court and, accordingly, that court should have found that the defendant's arrest and the subsequent search and seizure were lawful.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion SPEAR, J., concurred.

HENNESSY, J., dissenting. The majority concludes that in determining the propriety of a warrantless arrest, the trial court should first apply the two prongs of the *Aguilar-Spinelli* test and, only if that test is not met, look to the "totality of the circumstances" test. Accordingly, the majority concludes that because the trial court found that the *Aguilar-Spinelli* test was met, the trial court improperly and unnecessarily applied the totality of the circumstances test. Because I believe the two tier test applied by the majority to be incorrect and, therefore, its conclusion that the trial court's decision was clearly erroneous, I respectfully dissent.

I

The majority relies on *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991), in holding that the trial court should apply a two tier test to determine probable cause to arrest. In *Barton*, the Connecticut Supreme Court explained and adopted the totality of the circumstances test set forth in the United States Supreme Court decision in *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his

knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists." *State* v. *Barton,* supra, 544.[1] The majority interprets this to mean that in Connecticut, the first step in determining probable cause for a warrantless arrest lies in the application of the *Aguilar-Spinelli* test. Only when the *Aguilar-Spinelli* test fails may the trial court then consider the surrounding circumstances. I disagree with that interpretation and believe that while they are highly relevant, *the factors considered under Aguilar-Spinelli are not dispositive in and of themselves.* I believe that *Barton* and subsequent jurisprudence establish that the *Aguilar-Spinelli* test is no longer conclusive and that the trial court should examine the totality of the circumstances in determining probable cause to arrest.

"Prior to *Barton,* the Connecticut Supreme Court held to the rigid *Aguilar-Spinelli* test that the sufficiency of an informant's information depended on the state's establishing (1) the informant's 'basis of knowledge' about the information he furnished and (2) the underlying facts establishing his veracity. *State* v. *Kimbro,* [197 Conn. 219, 224–25, 496 A.2d 498 (1985)]." *State* v. *Hunter,* 27 Conn. App. 128, 133, 604 A.2d 832 (1992). "In *State* v. *Barton,* supra, 219 Conn. 544, our Supreme Court adopted the 'totality of the circumstances' standard for determining probable cause used by the federal

---

[1] Although *Barton* involved a search and seizure pursuant to a warrant, as did *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and *Gates,* "the same standards of probable cause apply to a warrantless search and seizure. See, e.g., *United States* v. *Smith,* 598 F.2d 936, 937 n.2 (5th Cir. 1979)." *State* v. *Martin,* 2 Conn. App. 605, 612B, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985).

courts pursuant to the decision of the United States Supreme Court in *Illinois* v. *Gates*, [supra, 462 U.S. 213]." *State* v. *Marsala*, 42 Conn. App. 1, 5, 679 A.2d 367, cert. denied, 239 Conn. 912, 682 A.2d 1010 (1996).

"*Illinois* v. *Gates*, [supra, 462 U.S. 213], dealt with an anonymous tip in the probable-cause context. The [United States Supreme] Court there abandoned the 'two-pronged test' of *Aguilar* v. *Texas*, [378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)], and *Spinelli* v. *United States*, [393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)], in favor of a 'totality of the circumstances' approach to determining whether an informant's tip establishes probable cause." *Alabama* v. *White*, 496 U.S. 325, 328, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). "Although *Gates* abandoned the two-pronged test in favor of a totality of the circumstances test, the *Gates* majority did not reject out of hand the underlying concerns that had originally been expressed in *Aguilar*. . . . Rather, the court agreed that an informant's veracity or reliability and the basis of knowledge inquiries formulated in *Aguilar* remain highly relevant in the determination of probable cause and should be regarded as closely intertwined issues that may usefully illuminate the [common sense], practical question of the existence of probable cause to believe that contraband or evidence is located in a particular place. . . . The court did abandon, however, the rigid compartmentalization of the inquiries and *denied that the court had ever intended them to be understood as entirely separate and independent requirements to be rigidly exacted in every case.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Rodriguez*, 27 Conn. App. 307, 317–18, 606 A.2d 22 (1992). "Since [*Barton*], we have held, in accordance with *Illinois* v. *Gates*, [supra, 213] that article first, § 7, of the Connecticut constitution does not require rigid

compliance with the *Aguilar-Spinelli* test. *State* v. *Barton*, [supra, 219 Conn. 529]." *State* v. *Duntz*, 223 Conn. 207, 215, 613 A.2d 224 (1992).

The majority would require an analysis under the totality of the circumstances test only if probable cause is not found under the two prongs of *Aguilar-Spinelli.* The two tier test adopted by the majority lacks support in Connecticut jurisprudence, past or present. While I agree that the factors considered under *Aguilar-Spinelli* are considered in the totality of the circumstances test, they are not dispositive in and of themselves. "[W]e agree with the conclusion of the United States Supreme Court in *Gates* that the two prongs of the *Aguilar-Spinelli* test are highly relevant evidentiary questions that a magistrate issuing the warrant must consider in deciding whether probable cause for a search or seizure exists, *but that they are not wholly independent and dispositive constitutional tests for which de novo review exists at a suppression hearing. See Illinois* v. *Gates*, supra, [462 U.S. 230]." (Emphasis added.) *State* v. *Barton*, supra, 219 Conn. 540.

Moreover, the opinion posited by the majority has been explicitly rejected by the United States Supreme Court in *Massachusetts* v. *Upton*, 466 U.S. 727, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984). "The Massachusetts court apparently viewed *Gates* as merely adding a new wrinkle to this two-pronged test: where an informant's veracity and/or basis of knowledge are not sufficiently clear, substantial corroboration of the tip may save an otherwise invalid warrant. . . . We think that the Supreme Judicial Court of Massachusetts misunderstood our decision in *Gates*. We did not merely refine or qualify the two-pronged test. We rejected it as hypertechnical and divorced from the factual and practical considerations of [everyday] life on which reasonable and prudent men, not legal technicians, act. . . . Our statement on that score was explicit. [W]e conclude

that it is wiser to abandon the two-pronged test established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations." (Citations omitted; internal quotation marks omitted.) Id., 730–32; see also *State* v. *Perry*, 195 Conn. 505, 508–509, 488 A.2d 1256 (1985).

Accordingly, I believe that the totality of the circumstances is the proper test. The factors considered in *Aguilar-Spinelli* are highly relevant in viewing the totality of the circumstances, but they are not a first step or a condition precedent. I must find, therefore, that, despite the fact that the trial court superfluously found that the two prongs of the *Aguilar-Spinelli* test were met, it properly applied the totality of the circumstances test to determine whether probable cause to arrest existed.

II

Having first set out what I believe the totality of the circumstances test to be, I turn to the particular facts of this case. "On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 225, 673 A.2d 1098 (1996).

In light of that standard, even if I were to agree with the analysis of the law as posited by the majority, I could not agree with the result reached. The majority substantiates its reversal of the trial court by stating that there was a substantial basis on which the trial court *could have found* probable cause. This, however, is not the proper standard of review. We do not engage in speculation as to what the trial court could have

found, but review what the trial court *did* find. In doing so, we must decide whether the trial court's finding of a lack of probable cause to support the defendant's arrest was "legally and logically inconsistent with the evidence." Id.

The trial court stated in its memorandum of decision that "[i]n this case the facts satisfying *Aguilar-Spinelli* could not be leaner. . . . In the absence of such corroboration, it is held that probable cause did not exist for the defendant's arrest." In effect, the majority has found that the trial court's consideration of "corroboration" was clearly erroneous. I disagree.

The following facts must be emphasized. On March 5, 1996, the Willimantic police received a telephone call from an informant. This informant told them that he had just purchased drugs from someone in a soup kitchen and that the same man was there every day selling drugs. The officers told the informant to call them back if it happened again. The officers did not make any attempt to set up surveillance of the soup kitchen or the defendant. On March 6, 1996, the informant called again and said that drug sales had been conducted and he had seen them but had not participated in them. Acting on this second call, detectives immediately went to the reported location where they observed the defendant.

The police officers testified at the suppression hearing that when they arrived "the defendant was not doing anything illegal, and he did not try to escape when the officers entered the soup kitchen [and] arrested the defendant." The search at issue in the defendant's motion to suppress was conducted incident to the arrest. Therefore, in order to uphold the search of the defendant, there must have been probable cause to arrest the defendant independent from the search.

"Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and

circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' *Beck* v. *Ohio*, [379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)].'' *Adams* v. *Williams*, 407 U.S. 143, 148, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); see *State* v. *Dennis*, 189 Conn. 429, 431, 456 A.2d 333 (1983); *State* v. *Wilson*, 178 Conn. 427, 435–36, 423 A.2d 72 (1979); *State* v. *Wilson*, 153 Conn. 39, 42, 212 A.2d 75 (1965). "[W]e have expressed a strong preference for warrants and declared that 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.' *United States* v. *Ventresca*, [380 U.S. 102, 106, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965)].'' *United States* v. *Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

"When an informant's tip underlies an arrest, the trial court's task is to review the totality of the circumstances to determine the existence of probable cause. *Illinois* v. *Gates*, [supra, 462 U.S. 238–39]; *State* v. *Barton*, [supra, 219 Conn. 529]. This inquiry involves an assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . . [In addition to the veracity, reliability and basis of knowledge of the informant,] [c]orroboration of an informant's tip by independent police information has long been considered critical in determining probable cause. *McCray* v. *Illinois*, 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967); *Draper* v. *United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). *State* v. *Hunter*, supra, [27 Conn. App. 134].'' (Citations omitted; internal quotation marks omitted.) *State* v. *Conley*, 31 Conn. App. 548, 555, 627 A.2d 436, cert. denied, 227 Conn. 907, 632 A.2d 696 (1993). In the context of fourth amendment jurisprudence, the phrase "totality of the circumstances" has been described by

the Supreme Court as meaning "the whole picture." *United States* v. *Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). Further, it has been described as having both "quantity and quality" as pivotal components. *Alabama* v. *White*, supra, 496 U.S. 330. Therefore, the totality of the circumstances analysis involves a review of *all of the facts available to the trial court,* not just those enunciated in *Aguilar-Spinelli*. To hold otherwise would require a finding of probable cause to arrest regardless of other facts before the trial court.

In this case, the known informant merely supplied the basis of his information and the location of the defendant.[2] In and of itself, that information may form reasonable suspicion[3] to support an investigative stop, but standing alone, absent independent police investigation, it may be deemed by a reviewing court to be insufficient. I can find no Connecticut case where an informant's tip, without any police corroboration or verification of the information given, has been upheld. It is important to note that *Gates* dealt with an informant who supplied information that included more than the "easily obtained facts and conditions existing at the time of the tip, but [referred] to future actions of third parties ordinarily not easily predicted." *Illinois* v. *Gates*, supra, 462 U.S. 245. As the *White* court noted, the importance of the information in *Gates* was "the caller's ability to predict respondent's *future behavior*, because it

[2] This is not to mean that noncriminal acts can never form the basis for probable cause when taken together: "We noted in *Gates*, [supra, 462 U.S. 243–44 n.13], that 'innocent behavior will frequently provide the basis for a showing of probable cause,' and that '[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.' " *United States* v. *Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

[3] "Reasonable suspicion is a less demanding standard than probable cause . . . in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama* v. *White*, supra, 496 U.S. 330; see footnote 2.

demonstrated inside information—a special familiarity with respondent's affairs." (Emphasis in original.) *Alabama* v. *White*, supra, 496 U.S. 332.

The majority improperly finds error with the trial court's consideration of corroboration. The case law support's a trial court's consideration of corroboration when examining probable cause.[4] See *State* v. *Rodriguez*, 223 Conn. 127, 136–37, 613 A.2d 211 (1992); *State* v. *Santiago*, 27 Conn. App. 741, 749–50, 610 A.2d 666, cert. denied, 223 Conn. 906, 610 A.2d 179 (1992). It is clear that "[t]he police, however, are not required to corroborate all of the information provided by a confidential informant. . . . *Partial corroboration may suffice. State* v. *Cofield*, [220 Conn. 38, 47–48, 595 A.2d 1349 (1991) (en banc)]." (Citations omitted; emphasis added.) *State* v. *Leonard*, 31 Conn. App. 178, 187, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7, 1994).

Accordingly, I find that on the basis of the facts of this case, the trial court's determination that probable cause to arrest did not exist was not clearly erroneous. Therefore, I would affirm the trial court's decision.

I respectfully dissent.

---

[4] "Furthermore, statements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police. . . . If the police have evidence (such as from prior independent police work), which corroborates some of the details included in the affidavit, then an inference of reliability will rise." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 223 Conn. 127, 136–37, 613 A.2d 211 (1992).