[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
 I. FACTUAL AND PROCEDURAL BACKGROUND
The defendant moves to suppress evidence seized from his person following his warrantless arrest on March 11, 2000. Specifically, the defendant alleges that the New Britain Police Department: (1) lacked probable cause to arrest and search him; (2) lacked reasonable suspicion to stop and frisk him; and (3) engaged in an impermissible strip search in violation of General Statutes §§ 54-33k and 54-33l. The defendant filed the present motion to suppress and memorandum of law in support thereof on February 5, 2002. The state filed its memorandum of law in opposition to the defendant's motion to suppress on March 21, 2002. An evidentiary hearing was held on that date. The state called Officer Jerry Chrostowski and Officer Christopher Brody as witnesses. The defendant did not call any witnesses or present any evidence. Based upon the testimony presented at the suppression hearing, the Court finds the following facts:
Officer Chrostowski was contacted by a confidential informant during the week of March 6, 2000 who informed the officer of drug trafficking being conducted by an individual named Michael Jenkins of 41 Harvard Street in New Britain. This informant's information had been reliable in the past and had led to three or four previous convictions. He supplied Officer Chrostowski with Jenkins' pager number. On March 11, 2000, Officer Chrostowski called this number on a New Britain Police Department phone equipped with a caller ID unit. The page was returned within five minutes and a number of 826-7164 registered on the unit. Officer Chrostowski contacted SNET and was given an address for that phone number of 41 Harvard Street. He had known Michael Jenkins prior to this event and had personal knowledge that Jenkins lived at that address. Officer Chrostowski identified himself as "Chris" and the caller identified himself as "Mike." Officer Chrostowski ordered a "bundle," or ten packets, of heroin, and was told that it would cost $80.00. The two parties agreed to meet at East Side Pizza on East Street in New Britain in order to complete the transaction. Office Chrostowski indicated that he would be wearing a baseball cap.
Officer Chrostowski waited in front of East Side Pizza and was informed CT Page 3341 by Sergeant Moreno, who was conducting surveillance at 41 Harvard Street, that a black male was exiting the residence and was headed towards the restaurant. Jenkins approached within seven feet of Officer Chrostowski and then suddenly stopped when he saw the officer's face. Jenkins was approached by several New Britain police officers, including uniformed Officer West, who placed Jenkins under arrest for attempt to sell a narcotic substance. Jenkins was handcuffed by Officer West and was taken to the side of the restaurant to be searched. Officer Chrostowski seized Jenkins' beeper which contained the New Britain Police Department phone number. Officer Christopher Brody conducted a search of Jenkins incident to the arrest and felt an object in the buttocks area not consistent with the male anatomy. Officer Brody pulled Jenkins' pants and underwear back and observed a quantity of glassine packets. These items were seized and field tested. They tested positive for heroin and crack cocaine.
 II. DISCUSSION
The defendant's first argument is that the New Britain Police Department lacked probable cause to arrest and search him. "Under both the federal and the state constitutions, a warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions." (Internal quotation marks omitted.) State v. Cooper, 65 Conn. App. 551,564, 783 A.2d 100, cert. denied, 258 Conn. 940, 786 A.2d 427 (2001). "The state bears the burden of proving that an exception to the warrant requirement applied." State v. Hedge, 59 Conn. App. 272, 277, 756 A.2d 319
(2000). "One recognized exception to the warrant requirement applies when a search is conducted incident to a lawful custodial arrest. . . . This exception permits a police officer to conduct a full search of an arrestee and to seize evidence as well as weapons." (Citations omitted.)State v. Tine, 236 Conn. 216, 235-36, 673 A.2d 1098 (1996). "Thus, if the defendant's arrest was lawful, the subsequent warrantless search . . . also was lawful." (Internal quotation marks omitted.) State v. Hedge, supra, 277.
"General Statutes § 54-1f (b) authorizes a police officer to conduct a warrantless arrest of `any person who the officer has reasonable grounds to believe has committed or is committing a felony.' The phrase `reasonable grounds to believe' is synonymous with probable cause." (Internal quotation marks omitted.) State v. Cooper, supra,65 Conn. App. 564-65. "The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a `totality of the circumstances' test." (Internal quotation marks omitted.) State v. Hedge, supra, 59 Conn. App. 278. "Probable cause exists when the facts and circumstances within the knowledge of the CT Page 3342 officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed." (Internal quotation marks omitted.) State v. Clark, 255 Conn. 268, 292, 764 A.2d 1251 (2001). "[Our Supreme Court] consistently [has] held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction . . . [and is] less than proof by a preponderance of the evidence." (Internal quotation marks omitted.) Id. 292-93.
Officer Chrostowski received information from a confidential informant that the defendant was engaged in drug trafficking. The informant had previously supplied the officer with reliable information. Officer Chrostowski knew the defendant from previous encounters. The officer corroborated the tip by calling the beeper number, noting the telephone number of the location where the return call originated from, and confirming the address where the call originated from. He had personal knowledge that the defendant resided at this address. "Corroboration of an informant's tip by independent police information has long been considered critical in determining probable cause." State v. Hunter,27 Conn. App. 128, 134, 604 A.2d 832 (1992).
Officer Chrostowski not only corroborated the informant's information, he personally negotiated with the defendant for a sale of narcotics. However, the defendant argues that "[t]here was no crime committed by Jenkins. . . . The fact that Officer Chrostowski paged Jenkins and was told by Jenkins to go to the restaurant does not reasonably mean that Jenkins was actually going to sell any drugs. . . . It is not unreasonable to assume that Jenkins was simply going to the restaurant to find out who was trying to buy drugs from him. The police authorities did not give Jenkins a chance to commit any crime." Defendant's Memorandum of Law in Support of Motion to Suppress [hereinafter Def.'s Memo.], pp. 15-16. This argument does not appreciate the fact that the defendant was arrested for attempt to sell a narcotic substance. "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a)(2). The evidence supports the finding that the defendant agreed to sell ten packets of heroin to Officer Chrostowski, using the name "Chris," for a price of $80.00. The defendant's actions thereafter, including leaving his residence to meet the "buyer" at the prearranged location and carrying a number of packets of heroin on his person, constituted a "substantial step in a course of conduct planned to culminate in his commission of the crime" of sale of narcotics, a CT Page 3343 felony. The state has established that the New Britain Police Department had sufficient probable cause to arrest the defendant, and therefore, the search of the defendant incident to the arrest was lawful. The arguments made by the defendant are proper arguments to be made at time of trial, but they do not vitiate probable cause in this case.
The defendant further argues that "[e]ven if one assumes . . . that there was sufficient probable cause for an arrest, the search far exceeded the scope that was necessary to protect the officer's safety." Def.'s Memo, p. 16. However, as stated previously, a search incident to an arrest permits a police officer to search for and seize weapons as well as evidence. See State v. Clark, supra, 255 Conn. 292; State v.Tine, supra, 236 Conn. 235-36; State v. Hedge, supra, 59 Conn. App. 277.
The defendant also argues that the evidence should be suppressed because the New Britain Police Department engaged in an improper strip search in violation of General Statutes §§ 54-33k and 54-33l. A `strip search' is defined as "having an arrested person remove or arrange some or all of his or her clothing or, if an arrested person refuses to remove or arrange his or her clothing, having a peace officer or employee of the police department remove or arrange the clothing of the arrested person so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments used to clothe said anatomical parts of the body." General Statutes § 54-33k. General Statutes § 54-33l
provides the proper procedure to be followed when conducting a strip search and includes such measures as obtaining written permission of the police chief and preparing a report of the search. See General Statutes § 54-33l.
The police in the present case pulled back the defendant's pants and underwear so as to expose the buttocks in order to remove the evidence which Officer Brody felt after conducting a pat down of the defendant. Assuming, without deciding, that the New Britain Police Department technically violated the statute, the Court declines to impose the sanction of suppression of the evidence. The statute does not authorize such a result and our case law is clear that the exclusionary rule is a proper remedy for violations that rise to the level of constitutional infringements. See State v. Foster, 258 Conn. 501, 507, 782 A.2d 98
(2001) ("The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim. . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches seizures.") (Internal quotation marks omitted.); State v.Marsala, 216 Conn. 150, 164, 579 A.2d 58 (1990) ("The exclusionary rule places no limitations on the actions of the police. Thefourth amendment
does.") (Internal quotation marks omitted.); State v. Pierce, CT Page 334467 Conn. App. 634, 639, 789 A.2d 496 (2002) ("The purpose of the exclusionary rule is to penalize law enforcement officials by suppressing evidence obtained by illegal means in order to deter police conduct that tramples on the fourth amendment rights of citizens.") (Internal quotation marks omitted.). The defendant was taken to the side of the restaurant so as to be out of public view. The glassine packets were clearly visible when Officer Brody pulled the defendant's pants and underwear back. The officer did not conduct a body cavity search. The seizure was completed in a matter of seconds. The search of the defendant and the seizure of the narcotics were not unreasonable and did not rise to the level of a fourth amendment violation. Therefore, application of the exclusionary rule is not appropriate in this case.
As a result of the Court's ruling that the New Britain Police Department had probable cause to arrest and search the defendant, his alternate argument that the police lacked reasonable suspicion to stop and frisk him is moot.
 III. CONCLUSION
Based upon the foregoing analysis, the defendant's motion to suppress is denied. Dated at New Britain, Connecticut this twenty sixth day of March, 2002.
BY THE COURT,
 ___________________ Owens, Judge
CT Page 3344-a